JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

PAUL A. TURCKE
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
(202) 353-1389
paul.turcke@usdoj.gov

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BLACK ROCK CITY LLC, and BURNING MAN PROJECT, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) ) | Civil Action No. 19-cv-03729-DLF |
| DEBRA HAALAND, SECRETARY OF THE INTERIOR *et al.*, ) ) ) | |
| Defendants. ) ) | |

# DEFENDANTS' REPLY MEMORANDUM
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A.    Plaintiffs' Case Suffers Jurisdictional Defects. ........................................ 2

    B.    BLM Complied with Applicable Law and the SRP Regulations. ......................... 8

    C.    BLM's Cost Recovery Choices are Supported by Substantial Evidence. ............ 12

        1.    Law Enforcement. ....................................................................... 15

        2.    Work Status Designations. ......................................................... 17

        3.    Technology and Information Systems. ...................................... 19

        4.    Government Employee Medical Facility. .................................. 20

        5.    Third Party Vendor Administration. .......................................... 21

    D.    Plaintiffs Improperly Seek a Refund from the Court. ............................ 22

III. CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Bar MK Ranches v. Yuetter,*
   994 F.2d 735 (10th Cir.1993) ................................................................. 13

*Bookcliff Rattlers Motorcycle Club,*
   171 IBLA 6, 2006 WL 4072646 (Dec. 20, 2006)...................................... 7

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988).................................................................................. 23

*Burning Man Project,*
   197 IBLA 66, 2021 WL 1713214 (April 23, 2021)............................... 5, 7

*Cayuga Nation v. Zinke,*
   302 F. Supp. 3d 362 (D.D.C. 2018) ........................................................ 14

*Checkosky v. SEC,*
   23 F.3d 452 (D.C. Cir. 1994).................................................................... 24

*\*Consol. Edison Co. of New York v. NLRB,*
   305 U.S. 197 (1938).................................................................................. 12

*\*Epsilon Electronics, Inc. v. U.S. Dep't of Treasury,*
   857 F.3d 913 (D.C. Cir. 2017).................................................................. 12

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of the Interior,*
   478 F. Supp. 2d 11 (D.D.C. 2007) ............................................................ 3

*Hubbard v. Administrator, EPA,*
   982 F.2d 531 (D.C. Cir. 1992).................................................................. 23

*Independent Petroleum Ass'n of America v. Babbitt,*
   235 F.3d 588 (D.C. Cir. 2001).................................................................... 3

*ITServe All., Inc. v. Cuccinelli,*
   502 F. Supp. 3d 278 (D.D.C. 2020).......................................................... 23

*Kokkonen v. Guardian Life Ins. Co.,*
   511 U.S. 375 (1994).................................................................................... 3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992).................................................................................... 3

*\*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990).................................................................................... 2

*Marcum v. Salazar,*
   751 F. Supp. 2d 74 (D.D.C. 2010) ........................................................... 14

*Maritel, Inc. v. Collins,*
   422 F. Supp. 2d 188 (D.D.C.2006)........................................................... 13

*Michael Voegele,*
   174 IBLA 313, 2008 WL 4117172 (May 29, 2008) ................................................. 7

*Mingo Logan Coal Co. v. EPA,*
   829 F.3d 710 (D.C. Cir. 2016) ................................................................................. 23

*\*Mississippi Comm'n on Env't  Qual. v. EPA,*
   790 F.3d 138 (D.C. Cir. 2015) ................................................................................. 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ................................................................................................... 23

*Nevada Power Co. v. Watt,*
   711 F.2d 913 (10th Cir. 1983) ........................................................................ 8, 9, 13

*Shuler v. United States,*
   531 F.3d 930 (D.C. Cir. 2008) ................................................................................... 3

*Sierra Club v. Mainella,*
   No. Civ.A. 04-2012 JDB, 2005 WL 3276264 (D.D.C. Sep. 1, 2005) ........................ 3

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ..................................................................................................... 3

*United Steel Workers Int'l Union v. Pension Benefit Guar. Corp.,*
   707 F.3d 319 (D.C. Cir. 2013) ................................................................................. 12

*Univ. of Colorado Health v. Azar,*
   486 F. Supp. 3d 185 (D.D.C. 2020) ......................................................................... 13

**Statutes**

16 U.S.C. § 6801 .............................................................................................................. 1

43 U.S.C. § 1301 .............................................................................................................. 1

43 U.S.C. § 1734(b) ......................................................................................................... 9

5 U.S.C. § 551 .................................................................................................................. 1

**Regulations**

43 C.F.R. Part 2930 .......................................................................................................... 1

43 C.F.R. § 2931.8 ........................................................................................................... 6

43 C.F.R. § 2932.31 ......................................................................................................... 4

43 C.F.R. § 2932.31(e)(3) .............................................................................................. 10

43 C.F.R. § 2932.32 ......................................................................................................... 4

43 C.F.R. § 2932.33(a) ..................................................................................................... 4

43 C.F.R. § 4.21(a)(3) ...................................................................................................... 7

# I.  INTRODUCTION

This case involves the 2015-2019 administration of a special recreation permit ("SRP") on public lands administered by the U.S. Bureau of Land Management ("BLM").  The applicants, previously Black Rock City LLC and now Burning Man Project (collectively, "BMP"), contend that BLM has charged them unnecessary, unjustified, and unreasonable costs in violation of law and derogation of their rights to use the public lands for the Burning Man Event.

The Court evaluates Plaintiffs' claim under the Administrative Procedure Act.  5 U.S.C. § 551, *et seq*. (the "APA").  Such review is deferential, and does not allow the Court to substitute its views for those of the agency.  It certainly does not invite a deep dive into factual disputes, where Plaintiffs might pit their "experts" against agency specialists in the hopes of painting a more compelling view for the Court.  But Plaintiffs' arguments, grafted onto a district court caption from a litany of unresolved appeals before the administrative Interior Board of Land Appeals ("IBLA"), attempt just such an undertaking.  Their case is fundamentally flawed, and their arguments should be rejected.

Defendants have reasonably interpreted their relevant duties under the Federal Land Policy and Management Act, 43 U.S.C. § 1301, *et seq*. ("FLPMA"), the Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6801, *et seq*., and implementing regulations, codified at 43 C.F.R. Part 2930 (the "SRP Regulations").  Defendants' factual conclusions are supported by substantial evidence in the administrative record.  Defendants have wide latitude when exercising discretion in the cost recovery setting, and have acted within those boundaries for each Event year in dispute.  The Court should deny Plaintiffs' motion for summary judgment, grant Defendants' cross-motion, and dismiss this case with prejudice.

## II. <u>ARGUMENT</u>

Plaintiffs bring years of frustrations over Event-related expenses before the Court, seeking a refund for what they consider to be "unreasonable" charges. BLM is authorized to recover the costs associated with issuing a permit for BMP's requested use, has reasonably interpreted applicable law and regulations, has actively engaged with BMP in the permitting process, and has reasonably exercised its discretion in deciding the nature and amount of costs chargeable to BMP. Plaintiffs' claim germinates from mere disagreement with BLM's choices, and has not grown into anything resembling a viable claim under the APA. The Court should deny Plaintiffs' motion, grant Defendants' motion, and dismiss this case.

### A. Plaintiffs' Case Suffers Jurisdictional Defects.

Plaintiffs have failed to identify the discrete final agency action that causes their alleged injuries. Doing so is a jurisdictional requirement – a plaintiff "must direct its attack against some particular agency action that causes it harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (internal quotation marks omitted); *see* Mem. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Defs.' Mot. for Summ. J. 30, ECF No. 29 ("Defs.' Mem.").[1] Instead, BMP brings a generalized attack against "cost recovery charges" over a five-year period. Mem. in Opp'n to Defs.' Mot. for Summ. J. and Reply in Supp. of Pls.' Mot. for Summ. J. 7, ECF No. 32 ("Pls.' Reply"). Now confronted by this requirement, BMP responds by expressing frustration toward BLM and the purported "Hobson's choice" created by the cost recovery process. *See* Pls.' Reply 15-16. But these frustrations primarily result from the scheduling challenges attendant to BMP's

---

[1]     Cites to the parties' briefs are to the page numbering in the ECF-stamped header. Cites to Defendants' brief are to the pages in the opposition brief (ECF No. 29) rather than the cross-motion brief (ECF 30). The text of those two briefs is identical, but the pagination differs slightly due to insertion of the cross-motion.

ambitious event, and BMP's strategic choices in challenging BLM's actions.  Plaintiffs'
imprecise jurisdictional foundation dooms their case, and it should be dismissed or cabined by
the requirements of proper APA review.

It is incumbent on Plaintiffs to identify the "discrete agency action that the Court is asked
to review." *Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of the Interior*, 478 F.
Supp. 2d 11, 25 (D.D.C. 2007).  While multiple final agency actions might provide a basis for
judicial review, a plaintiff must identify those that they challenge.  *Id*. ("A court has to know
what is being challenged."); *see also Independent Petroleum Ass'n of America v. Babbitt*, 235
F.3d 588, 595 (D.C. Cir. 2001) ("it is not at all clear what agency action [plaintiff] purports to
challenge").  The APA provides for "judicial review of final agency actions, so long as that
review is focused on a discrete final agency action." *Sierra Club v. Mainella*, No. Civ.A. 04-
2012 JDB, 2005 WL 3276264, at *17 (D.D.C. Sep. 1, 2005).  Federal courts exercise limited
jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen
v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994).  Plaintiffs bear the burden of establishing
and maintaining jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also
Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008); *Steel Co. v. Citizens for a Better
Env't*, 523 U.S. 83, 94 (1998).

There are two significant instances of final agency action in the cost recovery context.
Prior to processing the permit application BLM issues an Estimate Decision.  *See* Defs.' Mem.
29.  After the permitted event has occurred BLM issues a Closeout Decision.  *Id*.  It is the
Estimate Decision where cost recovery line items and amounts are specified.  *See e.g*. AR00692-
701.  In accordance with the SRP Regulations and agency guidance, if the applicant wishes to
proceed toward permit issuance the applicant makes specified payment of these costs upon

3

receipt of the Estimate Decision and execution of the associated Cost Recovery Agreement.  *See* 43 C.F.R. § 2932.32; AR07391. The Closeout Decision does not revisit whether or in what amount to charge the enumerated costs, but reflects an accounting to determine whether the fees paid are "refundable" – whether the "actual fees paid" are more or less than the "estimated fees . . . paid in advance." 43 C.F.R. § 2932.33(a).

Now that Defendants have raised these distinctions, Plaintiffs respond by turning to the allegations of the Amended Complaint.  Pls.' Reply 7.  Far from identifying the requisite target, the "Amended Complaint confirms that it is 'challenging the burdensome, unjustified, and excessive costs and other *unlawful practices* imposed upon BMP by BLM through the Special Recreation Permit ('SRP') *process*' and, more specifically, 'the unreasonable costs imposed by' BLM, '*the process by which those costs have been demanded*, and the inadequate justification for the costs imposed.'"  *Id*. (quoting Am. Compl. ¶ 2) (emphasis added).  BMP's "cause of action" targets BLM's "Cost Recovery Charges."  *See* Am. Compl. ¶¶ 81-87.  Tellingly, the Amended Complaint defines "Cost Recovery Charge" through a diffuse reference to BLM's regulatory authority to recover permit-related costs.  *Id*. ¶ 22 (citing 43 C.F.R. § 2932.31).  Thus, BMP does not articulate a claim against an agency *decision*, let alone an Estimate Decision, but one generally complaining of the nature or exercise of BLM's authority.[2]

Lacking any way to plausibly suggest it has ever challenged an Estimate Decision, BMP contends that it must await the Closeout Decision "to assess the reasonableness of the costs charged, and to challenge those final decisions to the extent they included unreasonable or insufficiently justified costs."  *See* Pls.' Reply 13.  But this position does not make sense.  The

---

[2]     The IBLA appeals do refer to specific BLM decisions, but those references are to Closeout Decisions.  *See* Defs.' Mem. 31-32 (addressing 2015, 2016, and 2019 appeals).

Estimate Decision specifies the costs that BLM will incur to process the permit and conduct the Event. For example, the Estimate Decision presents the numbers and type of law enforcement personnel that will be required to conduct the Event, and the associated cost. *See* AR00699-701 (specifying 74 positions including law enforcement operations chiefs, liaison, patrol, and investigations). Payment of this amount in the Estimate Decision and execution of the associated Cost Recovery Agreement causes BLM to incur the specified costs. BMP's argument hinges on the prospect that BLM might later decide – in the "final" Closeout Decision – that some portion (or entire category) of costs were unreasonable. But this would lead to the illogical result that the public would bear these disallowed costs, solely associated with BMP's Event. In reality, BMP's claimed financial injury occurs through the Estimate Decision, for it is here that BMP pays the recoverable costs for its Event.[3]

BMP further argues that an IBLA decision it received during briefing of these cross-motions "undermines" or "highlights the flaws in BLM's jurisdictional arguments." Pls.' Reply 17. BMP says *Burning Man Project*, 197 IBLA 66, 2021 WL 1713214 (April 23, 2021), reveals that an Estimate Decision is an interlocutory step that cannot constitute BLM's "final" action on cost recovery. Pls.' Reply 17-19. But *Burning Man Project* clearly states the opposite, and buttresses BLM's jurisdictional view. That appeal concerned BLM letters addressing a secondary issue about third-party contractors, and specifically whether letters categorizing certain types of contracted services were appealable final agency action(s). *Burning Man*

---

[3]   This conclusion is amplified by the fact that for each year in question, BMP has received a refund in the Closeout Decision. *See* AR00688 (2015 Event refund of $151,104.73); AR00786 (2016 Event refund of $33,831.59); AR01243 (2017 Event refund of $161,747.66); AR02755 (2018 Event refund of $272,759.64; AR03643 (2019 Event refund of $236,836.77). Thus, BMP suffers no injury, financial or otherwise, at the Closeout Decision. Any alleged injury is caused by the Estimate Decision – it is to that Decision that BMP must direct its attack.

*Project*, 2021 WL 1713214, at *2.  The IBLA concluded they were not, because the letters reflected inchoate terms and conditions of the permit, and thus only became appealable when the permit actually issued.  *Id*. at *5-6.  But the IBLA went to lengths to explain that other aspects of SRP processing do produce final agency actions subject to appeal, specifically including cost recovery:

> To prevent any potential misunderstanding going forward with respect to BMP's appeal rights, we emphasize that this decision does not affect a permittee's appeal rights under BLM's cost recovery regulations for commercial use SRPs.  When cost recovery is triggered, BLM makes two decisions concerning cost recovery that may be appealed to the Board.  First, an SRP applicant may appeal BLM's decision to impose cost recovery and require payment of the estimated amount. Second, the permittee may appeal BLM's final closeout decision in which it determines its actual costs and the amount of any refund (or further amount due). Today's decision *is unrelated to cost recovery* and holds that BMP may challenge BLM's interpretation of its regulations governing the contractors who are required to hold SRPs only after BLM has made its final decision on whether to issue the permit.

*Id*. at *10 (emphasis added) (citations omitted).[4]

BMP's argument on jurisdiction builds from the underlying theme that the regulations and/or BLM's behavior unfairly create a "Hobson's choice," in which BMP must pay "under duress" costs it considers patently unreasonable "or go out of business."  Pls.' Reply 16.  There are certainly challenges inherent in BMP's "business" of conducting its uniquely grand experiment in community living.  But the process provides ways to avoid or mitigate BMP's frustrations.  An applicant can appeal the Estimate Decision. 43 C.F.R. § 2931.8; AR00693 (2015 Estimate Decision, advising of appeal rights).  The appeal can include, or be submitted

---

[4]      *Burning Man Project* further dispels BMP's contention that BLM has created a "false dichotomy" through the Estimate Decision and Closeout Decision terminology.  *See* Pls.' Mem. 8-10.  The IBLA uses precisely these terms, reinforces BLM's interpretation as to the nature and scope of each decision, and confirms that each constitutes an appealable final agency action.

concurrently with, a petition for stay.  *Id.*  A petition for stay is the IBLA equivalent of a motion

for preliminary injunction in district court, and thus provides for the possibility of a swift,

favorable decision from the IBLA.[5]  There is scarce authority involving challenges under the

SRP Regulations, but the available decisions from IBLA proceedings illustrate these procedural

pathways.  *See Michael Voegele*, 174 IBLA 313, 316-18, 2008 WL 4117172, at *2-3 (May 29,

2008); *Bookcliff Rattlers Motorcycle Club*, 171 IBLA 6, 21, 2006 WL 4072646, at *4 (Dec. 20,

2006).

BMP mistakenly contends "BLM argues that without such an appeal, BMP has no right

to challenge the reasonableness of BLM's final cost recovery decision because the final decision

is based on the estimate."  Pls.' Reply 16.  Plaintiffs are the master of their case, and they must

plead a cognizable claim against the final agency action that causes their alleged injury.

Defendants are not arguing, as BMP suggests, that an appeal from the Estimate Decision is a

prerequisite to an appeal from the Closeout Decision.  But when an appellant wants to challenge

whether cost recovery is appropriate, or the nature and amount of the itemized charges to be

paid, that challenge must confront the Estimate Decision.  It is the Estimate Decision that

presents the agency's analysis and determination on these issues, and creates the applicant's

obligation to pay.  BMP was well apprised of its right to challenge both the Estimate Decision

and the Closeout Decision for each Event year in dispute.  Its challenges, in its IBLA appeals and

---

[5]     BMP questions "[t]he unspoken suggestion that the IBLA would rule on any appeal in a
timely manner" because its "2015 cost appeal remains unresolved, after languishing on the
docket for five years[.]"  Pls.' Reply 16 n.13.  However, none of BMP's appeals from "cost
recovery decisions" involved petitions for stay.  After 45 days, the absence of a ruling on a
petition for stay is deemed a denial of the petition.  43 C.F.R. § 4.21(a)(3) and (b)(4).  In *Burning
Man Project* Plaintiffs did petition for a stay, which the IBLA ruled upon one week later.  *See
Burning Man Project*, 2021 WL 1713214, at *4 n.33 (discussing ruling), *id*. at *2 n.2 (noting
appeal filing date).  The appeal was fully resolved by the IBLA in approximately one year.  *Id.*

the Amended Complaint, cannot be construed to attack discrete agency actions other than

Closeout Decisions.

Insofar as Plaintiffs seek to challenge specific elements of Defendants' cost recovery

charges, they have not met their burden of establishing jurisdiction before this Court.  They have

failed to direct their attack to the BLM Estimate Decisions where the agency identified the type

and amount of each cost recovery charge.  Failing to meet this burden, their case should be

dismissed.

**B.  BLM Complied with Applicable Law and the SRP Regulations.**

Defendants properly applied the law and employed suitable procedures in addressing cost

recovery.  Plaintiffs repeatedly but erroneously assert that Defendants charged every actual cost

or otherwise failed to follow applicable law.  As explained in Defendants' opening brief,

Plaintiffs' arguments all fail.  First, Plaintiffs' sole remaining case involving cost recovery,

*Nevada Power Co. v. Watt*, 711 F.2d 913 (10th Cir. 1983), is distinguishable.[6]  That case,

involving different cost recovery regulations outside the SRP context, held that it was error for

the agency to automatically seek recovery of its entire actual costs, without any consideration

whether any portion of those costs served the general public interest rather than exclusively

benefitting the applicant.  *Id*. at 925; Defs.' Mem. 37-38.  Next, Defendants demonstrated how

the decisions here followed the procedures of the SRP Regulations and agency guidance.  Defs.'

Mem. 38-39.  BMP complains that BLM failed to provide sufficient detail of certain costs, but

ignores the substantial itemization provided and presents no contrary authority for the level of

---

[6]     In accordance with LCvR 7(a), Plaintiffs' opening brief "chiefly relied" upon four cases,
two of which were IBLA cost recovery decisions that are not cited in their opposition/reply brief.
*See* Mem. in Supp. of Pls.' Mot. for Summ. J. 6, ECF No. 28 ("Pls.' Mem").

detail required.  *Id.* at 39-40.  Finally, Defendants noted the context here, in which the parties

engage in year-round detailed discussions about the Event, including cost recovery.  *Id.* at 40.

Plaintiffs' reply adds little.  BMP asserts that FLPMA imposes "substantive constraints"

on agency discretion, but does not describe those constraints beyond frequently stating that costs

must be reasonable.  Pls.' Reply 20.  Similarly, BMP invokes the requirement to follow the

"reasonableness factors" and accuses BLM of "ignor[ing] those prescribed standards" without

specifying what those standards are and how BLM's procedures are deficient.  *Id.* at 21.

Notwithstanding repeated assertions to the contrary, BMP's arguments boil down to a hope that

the Court will scrutinize BLM's judgment "under a ubiquitous 'reasonableness' standard."

Defs.' Mem. 32.

While Plaintiffs do not connect any of their arguments to the "reasonableness" factors, it

is appropriate to review those factors as articulated in FLPMA and refined by the SRP

Regulations.  The "reasonableness factors" consist of:

> (1) actual costs (exclusive of management overhead), (2) the monetary value of
> the rights or privileges sought by the applicant, (3) the efficiency to the
> government processing involved, (4) that portion of the cost incurred for the
> benefit of the general public interest rather than for the exclusive benefit of the
> applicant, (5) the public service provided, and (6) other factors relevant to
> determining the reasonableness of the costs.

43 U.S.C. § 1734(b) (numbering added); *Nev. Power Co.*, 711 F.2d at 924-25.  The SRP

Regulations further refine these factors in the cost recovery context:

> Cost recovery charges will be limited to BLM's costs of issuing the permit,
> including necessary environmental documentation, on-site monitoring, and permit
> enforcement.  Programmatic or general land use plan NEPA documentation are
> not subject to cost recovery charges, except if the documentation work done was
> done for or provides special benefits or services to an identifiable individual
> applicant.

43 C.F.R. § 2932.31(e)(3).  BMP makes no attempt to identify charges for programmatic or land use NEPA documentation.  Similarly, monetary value of the rights or privileges sought by BMP and efficiency to government processing are irrelevant, or would suggest the reasonableness of charging BMP for additional costs necessitated by its Event, which generates tens of millions of dollars of annual income in ticket sales alone.

Thus, BMP's "reasonableness factor" argument necessarily reduces to the unsupported proposition that conducting the Event provides a public service, or that some portion of costs charged really advance the general public interest rather than the exclusive benefit of the applicant.  But BMP does not cogently address those factors, falling far short of its burden to show BLM's choices to be arbitrary and capricious.  Instead, BMP posits a hypothetical about an outfitter who would curiously utilize a public campsite requiring clients to incur campsite fees, which provides no connection to the SRP context.  *See* Pls.' Reply 30.  If analysis and issuance of BMP's permit for the Event could be used to address planning duties for a public road right-of-way or land use plan amendment, then apportionment of the costs chargeable to BMP might be appropriate.  Of course, that is not the case here.  Costs charged to BMP "were only for event specific duties, all of which would not be expended if there was not an event."  AR04512 at ¶ 16.  The planning and analysis for BMP's experiment in community living does not remotely translate to BLM's other management duties, or the general public benefit.

BMP's remaining argument is that BLM "reflexively" charges every actual cost from the Event to the cost recovery account.  Pls.' Reply 26.  Again, this position is unsupported, and untrue.  The costs that BLM determines to be reasonable are specified in the Estimate Decision.  So when Defendants explain the Closeout Decision primarily focuses on documenting actual costs and comparing them to the Estimate Decision, all of those actual costs are within the subset

of reasonable costs.  *See* AR03617 at ¶ 12.  "Actual costs" as used in *Nevada Power* refers to the entire universe of costs attributable to the action at issue.  That broader universe of costs is greatly narrowed in the SRP cost recovery context, because there is a detailed process specified by the regulations.  This narrowing did not occur under the regulations at issue in *Nevada Power*. BMP knows that BLM does not charge for every actual cost related to the Event.  In the 2016 Event appeal BMP complained of being charged for costs associated with BLM's interpretive camp.  AR09993-94.  BLM uses the interpretive camp "to inform the event participants about public lands, the meaning of the NCA designation and the importance of preserving the natural and cultural history found within the NCA."  AR09993, AR10030.  But BLM "does not utilize the cost recovery account for the Burning Man event for any of the labor or supplies used for that interpretive camp."  AR07654 at ¶ 12.  BLM hands out informational and promotional items at the interpretive camp, and those too are paid from "BLM's own budget, rather than the cost recovery account for the Burning Man SRP."  *Id*. ¶ 13.  Defendants do not charge BMP for every actual cost related to the Event.

Defendants do not claim to have "unlimited discretion to charge permittees for whatever costs the agency actually incurs[,]" nor do they behave as if "'reasonable' is a superfluous addition to the statute[.]"  Pls.' Reply 22.  These are unduly harsh accusations pointed at an agency that has created two full-time positions devoted to addressing the year-round work necessitated by BMP's Event.  Far from proceeding by monarchical edict, BLM actively engages in a collaborative dialogue and ultimately makes discretionary choices that must balance an array of statutory and regulatory factors, which is the agency's role in the modern administrative state. The word "reasonable" certainly appears in FLPMA, and other statutes that BLM interprets, but

this does not change the nature of judicial review of BLM actions under the APA.  BLM has satisfied its procedural duties under FLPMA and the SRP Regulations.

### C.  BLM's Cost Recovery Choices are Supported by Substantial Evidence.

Plaintiffs' specific instances of allegedly "unreasonable" costs also fail, because the administrative record provides ample support for BLM's discretionary choices addressing cost recovery for each Event year in dispute.

Plaintiffs' position relies upon several flawed premises.  They now acknowledge that the "substantial evidence" standard governs review of factual disputes.  Pls.' Reply 25; *see also* Defs.' Mem. 26, 32-34.  Again, substantial evidence is a relatively low bar – a more deferential standard than the "preponderance of evidence" standard that Plaintiffs advanced before the IBLA.  *Compare* Pls.' Mem. 21-22 *with* AR11705.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 217 (1938).  This is met "by something less than a preponderance of the evidence" and the Court "must uphold the agency's judgment regarding the relevant facts, even if [the Court] think[s] the 'evidence tends to weigh against the agency's finding.'" *Epsilon Electronics, Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 925 (D.C. Cir. 2017) (quoting *United Steel Workers Int'l Union v. Pension Benefit Guar. Corp.*, 707 F.3d 319, 325 (D.C. Cir. 2013)).  In deflecting the substantial evidence analysis, Plaintiffs repeatedly turn to burden-shifting.  *See* Pls.' Reply 22 (claiming that "BLM must demonstrate that it actually engaged in an analysis of the reasonableness factors"); *id*. at 26 ("BLM is unable to point to any specific evidence that BLM adhered to the cost recovery statute.").  This inverts the proper inquiry – it is the plaintiff who must demonstrate the

agency's decision was based on an irrational interpretation of its duties or was unsupported by substantial evidence.

Plaintiffs relatedly contend that BLM has misinterpreted FLPMA's reference to "reasonable" costs "so as to be rendered unnecessary or insignificant." Pls.' Reply 21. Plaintiffs carry this accusation a step further to assert that "BLM argues it has unlimited discretion to charge permittees for whatever costs the agency actually incurs[.]" *Id*. at 22; *see also id*. at 26 ("BLM used cost recovery to reflexively charge BMP for every penny of actual costs between 2015–2019 'as a matter of course.'") (quoting *Nev. Power Co.*, 711 F.2d at 925). This is neither Defendants' argument, nor their practice. Inherent in the year-round process of working with BMP is the anchoring concept that BMP be responsible for reasonable costs. At the risk of belaboring the point, it is the Estimate Decision where these reasonable costs are itemized, and quantified. So it hardly "sinks" Defendants' position to recognize that Closeout Decisions do not revisit Plaintiffs' desired "reasonableness" determination. Pls.' Reply 26. The Estimate Decision reflects BLM's determination of reasonable costs assessed under FLPMA, a complex regulatory scheme, and detailed Event-specific analysis.

Plaintiffs mistakenly claim that "nearly all of BLM's evidentiary citations are to witness declarations filed in opposition to BMP's past IBLA appeals" and are thus "*post hoc* justifications" which cannot support the agency's decisions. Pls.' Reply 28. Nothing about this statement is correct. The administrative record includes "all documents and materials that the agency 'directly or indirectly considered' . . . [and nothing] more nor less." *Maritel, Inc. v. Collins,* 422 F. Supp. 2d 188, 196 (D.D.C.2006) (quoting *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993)). "Once produced by the agency, the [administrative] record 'is entitled to a strong presumption of regularity.'" *Univ. of Colorado Health v. Azar*, 486 F. Supp.

3d 185, 199 (D.D.C. 2020) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).

Given the five-year span of Plaintiffs' case and year-round interaction of the parties, it was

certainly proper for BLM decisionmakers to consider relevant IBLA submissions in rendering

cost recovery decisions before the Court.  Not only did Plaintiffs forego any objection to the

record, they requested inclusion of the now-questioned materials.  *See* Motion, ECF No. 25;

Second Decl. of Chelsea McKinney ¶ 2, ECF No. 27-1 ("Through conferral with Plaintiffs'

counsel, Defendants have agreed to include additional materials in the Administrative

Record[.]").  The "additional materials" included in the record primarily consist of IBLA

pleadings, including declarations.  *Compare* Cert. List 8, ECF No. 23-2 *with* Rev'd Cert. List, 8-

9, ECF No. 27-2.  Plaintiffs rely heavily on citations to their own briefing and declarations

before the IBLA.  *See* Pls.' Reply 33 (citing AR10958 at ¶ 4 (law enforcement staffing)); at 40

(citing AR11857 at ¶ 31, AR11972 at ¶¶ 19-20 (information technology)); *id*. at 42 (citing

AR11756 at ¶ 34 (medical unit)); *id*. at 45 (citing AR11858 at ¶ 33 (vendor oversight)).

Defendants have properly included IBLA submissions, including declarations, within the

administrative record in this case.

     BMP's argument is fundamentally deficient for failing to "demonstrate more than mere

disagreement with the [BLM's] reasoning." *Mississippi Comm'n on Env'tl Qual. v. EPA*, 790

F.3d 138, 174 (D.C. Cir. 2015); *see also Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 367

(D.D.C. 2018) (rejecting likelihood of success for claims "primarily based on speculation,

assignations of nefarious intent and mere disagreements with the determinations reached by

agency decisionmakers").  Ultimately, an inquiry on the merits here consists of a dispassionate

review assessing whether Defendants' actions are supported by substantial evidence in the

administrative record.  In each instance, they are.  Plaintiffs' claims must fail.

1. <u>Law Enforcement</u>.

BMP repeats its attacks on Defendants' law enforcement effort, arguing that staffing levels lack support, that BMP's evidence is more compelling, that there exist contradictory statements in the record, and that BMP is entitled to relief for having been subjected to Special Agent Love given his unrelated "indefensible and undeniable" history.  Pls.' Reply 28-37.  These last points require no further response – BMP adheres to the mistaken belief that it can prevail by showing its opinion on Event administration to be "more compelling" than BLM's, and that former Special Agent Love has anything to do with this case.  The salient question is whether Defendants' significant analysis of law enforcement operations is supported by substantial evidence in the record.  Even assuming that BMP's opinions were more "compelling" than BLM's, their arguments would still fail because BLM's evidence reasonably supports the positions it has taken, and therefore constitutes substantial evidence.

This case starts with the 2015 Event, so that is a logical place to begin examination of Defendants' record evaluating law enforcement.  Coming into the 2015 Event, BMP issued its After Action Report.  *See* AR04760-806.  The Report acknowledges that "[p]lanning for the Burning Man event is a year round collaborative process that involves significant levels of cooperation across a range of Federal, State and County agencies and contractors, and the success of the event is testament to the work all parties put into this process."  AR04763.  The "public safety" discussion states that "2014 saw significant improvements in community policing inside the city.  Participants reported over 120 positive interactions with law enforcement officers who were helpful, professional, and friendly.  [BMP] recognizes that these reports likely represent hundreds more positive interactions and greatly appreciates the work done by BLM and PCSO to provide community benefit and ensure public safety at Burning Man."  AR04773.

"BRC is very grateful to BLM and PCSO for their law enforcement work in Black Rock City and for the high level of cooperation between agencies and with BRC." AR04779. The 2015 planning effort involved particular efforts expanding this dialogue, starting with BLM's March 12 letter raising twenty safety, health and security issues. AR04750-59. BMP provided a detailed written response on April 22. AR06444-87. These discussions fit within the broader context of the previously-executed Memorandum of Understanding (AR04505-09), and continued through generation of the Estimate Decision, and execution of the Cost Recovery Agreement. *See* Defs.' Mem. 18-19. In response to BMP's concerns, BLM further explained the nature of its law enforcement operations, and rationale for challenged elements of those operations. AR04494-99. BLM's choices to define and achieve law enforcement operational objectives for the 2015 Event were supported by substantial evidence.

The analysis of law enforcement operations for subsequent Events built upon these efforts, starting with the 2016 Event. *See* Defs.' Mem. 20 (particularly including briefing (AR01029-34) to BLM Nevada State Director, evaluating significant changes for 2016 to reduce costs, including for law enforcement). BLM also issued a further letter continuing discussion of the "twenty issues" raised in 2015. AR04291-95. Regardless of any BLM efforts or improvements, BMP continued to raise the same concerns about law enforcement costs. *See* AR08802 (2015 Event appeal); AR09779-82 (Vind Decl.); AR09987-92 (2016 Event appeal); AR10032-37 (Vind Decl.); AR10736-43 (2017 Event appeal); AR11076-82 (Vind Decl.); AR11208-20 (2018 Event appeal); AR11533-43 (Vind Decl.); AR11709-23 (2019 Event appeal); AR11965-76 (Vind Decl.). Defendants have thoroughly addressed BMP's concerns, and explained their rationale. *See e.g.* AR04494-99 (Oper Decl. in 2015 Event appeal); AR07642-50 (Briscoe Decl. in 2016 Event appeal); AR02902-23 (Andres Decl. in 2017 Event appeal);

AR03600-14 (Andres Decl. in 2018 Event appeal).  Finally, Defendants analyzed public safety and law enforcement in additional layers, including substantial discussion in the Environmental Impact Statement.  *See* Defs.' Mem. 44-45 (citing Public Health and Safety appendix at AR08167-96).

Law enforcement planning is a primary focus of the parties' collaborative effort.  It is therefore unsurprising that the record contains significant discussion and documentation on the subject.  This makes BMP's effort to dispute BLM's conclusions particularly difficult, given that the Court must only consider whether the record contains evidence that a reasonable mind could conclude is supportive of BLM's conclusions.  BMP treats this case as if it were a bench trial about reasonableness, but this strategy is deeply flawed under the APA.  The Court should find that Defendants' conclusions on law enforcement staffing and operations are supported by substantial evidence, and that their cross-motion should be granted.

2.  Work Status Designations.

BLM has appropriately determined that the Event qualified for "emergency" and "mission critical" work status designations.  Again, BMP offers little more than unsubstantiated opinion to the contrary.  BMP must show that BLM has irrationally acted in contravention to statutory or regulatory procedures, or that the record lacks substantial evidence to support BLM's conclusions on work status designations.  BMP does not attempt, let alone succeed in making, either showing.

BMP first suggests that a "meticulously planned" event cannot be an emergency.  Pls.' Reply 37.  Yet again, BMP turns a catchy phrase untethered to legal authority or the record.  As Defendants first explained in responding to the 2015 Event appeal, "whether an event is planned or not has no bearing on the BLM's designation as an emergency."  AR04486.  Rather, the

designation addresses a regulatorily-defined status, which can include the potential for a "temporary condition posing a direct threat to human life or property" such as "a forest wildfire emergency." AR04498 at ¶ 17. BLM determined the Event to be a "mass gathering event [that] has contingency plans due to previous significant incidents that have occurred at the event including loss of human life, property damage due to fire, and a significant weather event that impacted the participants, the permittee, and Federal, state, and local law enforcement agencies." *Id*. ¶ 16. This reasoning is not arbitrary, for BMP has acknowledged "significant incidents on playa, including a major rain incident and a fatality." AR04763 (2014 AAR). More specifically, the 2014 Event included a rainstorm that caused significant congestion on all major roads and highways in the area, leading to "[c]ollaboration and communications" between cooperating agencies reaching "an all time high" to facilitate a level of service "to keep Burning Man participants safe during that challenging day." AR04764, AR07112 (explaining the storm resulted in a "Level 1 closure" of Black Rock City, stranding "thousands of passengers" along the entrance road and connecting highways); *see also* AR00009, AR02956 (describing similar closure due to wind/storm during 2018 Event).

BMP additionally argues that Defendants' position relies on "backfilling" the record with 2018 declarations. Pls.' Reply 38. This contention is inaccurate. There are numerous documents in the record other than declarations reflecting BLM's analysis of the work status designations. *See* Defs.' Mem. 46-47. Furthermore, the declarations, which were considered by BLM decisionmakers and are properly included in the record, span the entire timeframe in dispute. *See* AR04498 (2015 Event appeal); AR07652-53 (2016 Event appeal); AR02918-19 (2017 Event appeal); AR03616-17 (2018 Event appeal).

The work status designations carry no negative connotation, they are a reasonable means by which to waive statutory pay caps. Contrary to BMP's suggestion, not all agency personnel consider the Event a chance for a paid vacation. The Event significantly taxes BLM's nationwide law enforcement capability, and it is a challenge to fill the personnel roster for the Event. AR02904-05 at ¶¶ 8-9. Plaintiffs fail to show error in Defendants' work status designations.

> 3. Technology and Information Systems.

Bringing 70,000 people to a remote desert location in Nevada requires state-of-the-art technology and information systems, along with skilled personnel to configure, install, administer, and operate those systems. BMP's argument is again belied by its choice to label many of these costs as "unnecessary and unreasonable." Pls.' Reply 39. BLM's decisions addressing the Event's information technology demands are rational and supported by substantial evidence.

BMP's arguments amount to cherry-picking certain expense items, and then proclaiming them to be unjustified or unreasonable. BLM's evaluation of these detailed topics is documented in the record. Defs.' Mem. 48 (providing examples of reports and statements of work). BLM has thoroughly explained its rationale for the spectrum of IT issues. *See e.g.* AR04503, AR04514-17 (addressing 2015 Event appeal); AR07639-41, AR07660-64 (addressing 2016 Event appeal); AR02932-36 (addressing 2017 Event appeal). Again, BMP voices nothing more than disagreement with BLM's conclusions. For example, BMP disputes the necessity or reasonableness of BLM's choice to use satellite tracking systems for employees. Pls.' Reply 40. The support for this argument is the declaration of BMP's in-house Associate Director of Public Safety, who opines "these satellite trackers are not necessary equipment for law enforcement

19

operations at the Event."  AR11972 at ¶ 19.  However, BLM explains use of these devices

conforms to an established nationwide safety practice for daily government operations, because

the devices track real-time position of employees, provide for integration of this information to

dispatch and other systems, provide for two-way communication and emergency notification

messaging, and facilitate development of a Common Operating Picture, all of which BLM finds

to be useful and necessary.  AR04516-17 at ¶ 13.  A reasonable mind could conclude that BLM's

rationale constitutes support for its decision to use the devices.  Plaintiffs' arguments simply fail

to address their burden under the APA.

        4.       <u>Government Employee Medical Facility.</u>

BMP further asserts having a medical facility to treat government employees was "not

necessary and not justified."  Pls.' Reply 42.  This is another instance of BMP's mere

disagreement with BLM choices that are amply supported by substantial evidence.

BMP's argument repeats the now-familiar pattern – to critique documents in the record

and to claim that declarations should be dismiss as *post hoc* rationalizations.  BLM reasonably

analyzed whether to have the disputed medical facility.  Its decision to have one followed direct

communication with BMP.  AR04720, AR01358-60, AR04359-61.  The decision was further

based upon the U.S. Department of Health and Human Services report, concluding that the

medical unit appropriately addresses BLM's mission at the Event. AR08520, AR08538.  The

BLM medical unit provides services that are not otherwise available at the Event, and BLM has

rationally determined that the facility offers benefits that greatly outweigh its relatively small

expense.  Defs.' Mem. 49.  The declarations are properly in the administrative record, amplify

this analysis, and articulate BLM's rationale.  AR07649-50, AR02911-13, AR03610-12.  These

materials amply satisfy the deferential standard of review applicable here.

5.      Third Party Vendor Administration.

BMP's final effort to retroactively edit the cost recovery estimates involves BLM's treatment of third-party vendors providing services necessitated by the Event.  Pls.' Reply 44. BMP largely describes the various types of third-party contracted services occurring at the Event, suggesting there is a distinction for Outside Service Contractors because they "have direct commercial interactions" with Event participants.  *Id*. at 45.  Aside from trying to shift the burden to BLM to better explain why it has authority to proceed in its plainly-communicated manner of addressing these services, BMP suggests that BLM is illegally "double-dipping" by charging the contractors for commercial use fees and charging BMP for costs of administering the contractor permits.  *Id*. at 46.

Once again, BMP's argument lacks supporting authority, lacks supporting evidence in the record, and ignores BLM's reasoned explanation for its treatment of third-party vendors.  BMP's purported factual foundation for this argument consists of mere statements made by BMP officials in declarations submitted with the 2019 Event appeal.  *See id*. at 45 (citing AR11757 at ¶ 35 (Benson Decl.) and AR11858 at ¶ 33 (Allen Decl.)).  Thus, Mr. Allen testifies, on information and belief, to his perception "that BLM collects several hundred thousand dollars each year in total commercial use fees from these vendors."  AR11858 at ¶ 33.  BMP fails to develop its theory by failing to document fees charged, or to show "double-dipping" through collection of the same charge from multiple sources.  BLM has explained the unique circumstances created by the Event, and the rationale for treatment of the permit administration costs associated with these vendors.  *See* AR07654-55, AR02924-25, AR03620-21.  In fact, the present arrangement seems to have been arrived at in a collaborative fashion, if not at BMP's request.  In prior years, BMP exercised "the right to have all vendors covered under its SRP and

to manage the entire vending program."  AR07654 at ¶ 17.  However, under this approach "any violation by a vendor was also a violation to [BMP's] SRP and [BMP] declined to continue to manage the vendors in that manner[.]"  *Id.*; *see also* AR03621 at ¶ 36.  In the past, BMP apparently handled these permit administration duties, but has chosen to have them now covered by BLM.  It is hardly inequitable that BLM charges BMP for these permit administration costs.

Plaintiffs have not provided the Court with a basis to find BLM's treatment of third-party vendor permit administration costs to be arbitrary and capricious.  As with BMP's other objections to specific cost recovery charges, the Court should rule in Defendants' favor on the third-party vendor issue.

### D.  Plaintiffs Improperly Seek a Refund from the Court.

BLM's cost recovery decisions followed specified procedures and were supported by substantial evidence, so Plaintiffs motion should be denied and they should receive no relief. However, even if BMP were to prevail in some fashion, the proper remedy would be limited to a remand to BLM for further explanation or analysis.

BMP offers argument on remedy for the first time in its response/reply brief, stating that "setting aside" the "final cost recovery decisions[,]" compelling reimbursement "for all unreasonable and unjustified costs[,]" and "requir[ing] BLM in the future to charge only reasonable costs and to adequately explain its charges" are "completely consistent with remedies under the APA."  Pls.' Reply 47.  BMP erroneously assumes that it will presumptively receive a refund if the Court finds flaws in any aspect of BLM's cost recovery analysis.  However, BMP fails to identify a single case effectuating any of its proffered remedies in an analogous situation involving monetary payments.

BMP's cited cases do not support its refund paradigm.  Pls.' Reply 48.  Instead, they stem from *Bowen v. Massachusetts*, 487 U.S. 879 (1988), analyzing whether a request for relief in the form of monetary reimbursement precludes jurisdiction under the APA.  *See also Hubbard v. Administrator, EPA*, 982 F.2d 531 (D.C. Cir. 1992); *ITServe All., Inc. v. Cuccinelli*, 502 F. Supp. 3d 278 (D.D.C. 2020).  Defendants are not arguing that BMP's case must be dismissed because it seeks a refund, but rather that BMP has not demonstrated why or how it would receive one.  This line of authority is irrelevant to BMP's claimed remedy.

Aside from being unsupported by controlling (or any) precedent, BMP's refund theory suffers a fatal pragmatic defect.  As noted in Defendants' earlier briefing, the "unreasonable" charges claimed by BMP all involve a matter of degree.  *See* Defs.' Mem. 53.  Even if the Court finds merit in BMP's allegations about BLM's "bloated" IT services, or that law enforcement personnel are from higher strata on the pay scale and "sit idle" too frequently, surely BMP is only seeking a refund of the difference between the amount paid and an "unbloated" version of the costs incurred.  BMP has provided neither a legal theory nor a factual basis to mandate a waiver of cost recovery, or a finding that any type or category of cost recovery was illegal.  So its remedy theory turns on the mistaken notion that the Court can redline BLM's Estimate Decisions, and reduce individual line item entries to arrive at a more "reasonable" or "equitable" figure.  The Court cannot conduct this exercise without engaging in fact-finding, or substituting a different view for that of the agency, both plainly proscribed in APA review.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983); *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 718 (D.C. Cir. 2016).

Finally, BMP mistakenly suggests the Court faces little option but to "set aside" or vacate any aspect of BLM's decision-making found by the Court to fall short of the APA standard of

review.  In so suggesting, BMP fails to address Defendants' cited authority.  *See* Defs.' Mem.

52-53.  BMP's cited case actually supports Defendants' position.  *See* Pls.' Reply 48 (citing

*Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., concurring)).  The per

curiam opinion held that the "case is remanded to the Commission for a more adequate

explanation of its interpretation" of the disputed rule.  *Id*. at 456.  Judge Silberman wrote

separately to further address vacatur, rejecting the concurring opinion as turning on an invalid

syllogism and further stating that "Judge Randolph's minor proposition—that all agency actions

determined to be arbitrary and capricious must be set aside—is also dubious, in light of circuit

precedent."  *Id*. at 465.  That opinion includes an appendix of cases from 1991-1993 of "D.C.

Circuit cases remanding for inadequate explanation without vacating the agency action"

containing 29 entries.  *Id*. at 466.

Plaintiffs' claims are not presented in a way that would allow them to receive a refund.

BMP is not entitled to relief on any of its claims.  BMP provides no relevant authority in the SRP

cost recovery context to support its proffered remedy.  Even if the Court ruled in BMP's favor on

some claim, BMP's objections target the degree or amount of costs charged.  BMP provides no

basis for the Court make determinations like the "reasonable" level of law enforcement staffing,

or types and quantity of information technology equipment to deploy.  Doing so would amount to

reformulating the agency's decision, in contravention to the APA.  Where an agency fails to

sufficiently provide documentation or explain its reasoning, courts frequently remand the matter

for further agency proceedings.  Any remedy in this case should be limited to a remand to BLM.

## III.  CONCLUSION

Defendants respectfully request that the Court grant Defendants' cross-motion for

summary judgment, deny Plaintiffs' motion, and dismiss this case with prejudice.

Respectfully submitted this 28th day of June, 2021.

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Div.
United States Department of Justice

/s/ *Paul A. Turcke*
PAUL A. TURCKE (Idaho Bar # 4759)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
(202) 353-1389
paul.turcke@usdoj.gov

*Attorneys for Defendants*