## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK ROCK CITY LLC *et al.*,<br><br>　　　　　*Plaintiffs*,<br><br>　v.<br><br>DEBRA HAALAND,<br>Secretary, U.S. Department of the Interior,<br>*et al.*,[1]<br><br>　　　　　*Defendants.* | No. 19-cv-3729 (DLF) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Burning Man Project and Black Rock City LLC organize an annual festival on federal lands.  In this action, they argue that the Bureau of Land Management charged them an unreasonable amount for the permits necessary to use those lands.  Before the Court are the plaintiffs' Motion for Summary Judgment, Dkt. 28, and the Bureau's Cross-Motion for Summary Judgment, Dkt. 30.  For the reasons that follow, this Court will grant the plaintiffs' motion in part but exercise its discretion to remand the Bureau's decisions without vacating them.

## I.     BACKGROUND

### A.     Statutory and Regulatory Background

The Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701 *et seq.*, "establishes comprehensive rules for the management and preservation of federal lands."  *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 307 (D.C. Cir. 1987).  These rules allow the Bureau, a subagency of the Department of the Interior, to issue permits for the use of those lands.  *See* 43

---

[1] When this complaint was filed, David Bernhardt was the Secretary of the Interior.  When Debra Haaland became Secretary, she was substituted pursuant to Fed. R. Civ. P. 25(d).

U.S.C. §§ 1731, 1732(b).  They also allow the Bureau to collect "reasonable filing and service fees and reasonable charges" in connection with those permits.  *Id.* § 1734(a).  In determining whether a given charge is "reasonable," the Act instructs that the Bureau

> may take into consideration actual costs (exclusive of management overhead), the monetary value of the rights or privileges sought by the applicant, the efficiency to the government processing involved, that portion of the cost incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant, the public service provided, and other factors relevant to determining the reasonableness of the costs.

*Id*. § 1734(b).

The Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6801 *et seq.*, supplements the Bureau's authority to "establish, modify, charge, and collect recreation fees at Federal recreational lands," *id.* § 6802(a).  As relevant here, the Act allows the Bureau to issue "special recreation permit[s] . . . for specialized recreation uses of Federal recreational lands and waters," including "group activities" and "recreation events."  *Id.* § 6802(h).  It also allows the Bureau to charge "special recreation permit fee[s] in connection with the issuance of th[ose] permit[s]."  *Id.*

Pursuant to the above statutes, *see* 43 C.F.R. § 2931.3, the Bureau has promulgated regulations that govern both the issuance of special recreation permits and the determination of corresponding fees, *see id.* § 2932.5 *et seq.*  Under those regulations, the Bureau must publish its baseline fees in the Federal Register.  *See id.* § 2932.31(a)–(c).  In addition, when the Bureau issues a permit for commercial use, and when processing the permit requires over fifty hours of staff time, the Bureau may charge an additional fee for the "costs of issuing the permit, including necessary environmental documentation, on-site monitoring, and permit enforcement."  43 C.F.R. § 2932.31(e).  As relevant here, the Bureau may require applicants to pay an estimate of their fee before using federal lands.  *See id.* §§ 2932.31(f), 2932.33(a).  From there, if an

applicant's "actual fees due are less than the estimated fees [they] paid in advance," the Bureau will issue either a refund or a credit against future permits.  *Id.* § 2932.33(a).

The Bureau's regulations allow any party that is aggrieved by the above decisions to file an administrative appeal.  *See id.* § 2931.8(a).  The regulations further provide that the Bureau's decisions "will go into effect immediately and will remain in effect . . . unless a stay is granted" by an administrative appeals board.  *Id.* § 2931.8(b); *see also id.* § 4.21(b) (describing the procedures for an administrative stay).

### B.    Factual Background

In this case, the Burning Man Project and Black Rock City LLC challenge the special recreation permit fees that the Bureau collected from them between 2015 and 2019.  The Burning Man Project is a California nonprofit that "assumed responsibility for producing the Burning Man Event in 2019."  Am. Compl. ¶ 13, Dkt. 21 (undisputed).  Black Rock City is a wholly owned subsidiary of its co-plaintiff and produced the festival before that date.  *See id.* ¶ 12 (undisputed).  For convenience, the remainder of this opinion will refer to the plaintiffs collectively as the Burning Man Project (BMP).

The Burning Man event is a massive endeavor.  Every year, it draws roughly 70,000 people to federal lands in Nevada's Black Rock Dessert for a "combination art festival, social event, and experiment in community living."  A.R. 4847.  BMP uses those lands pursuant to special recreation permits, which it obtains from the Bureau.  *See* A.R. 3672.  As part of the permitting process, the Bureau works with BMP to plan and administer its events.  *See, e.g.*, A.R. 3672–84 (discussing the parties' collaboration with respect to the 2019 event).  Among other things, the Bureau provides law enforcement for those events, oversees their environmental

compliance, and administers several support contracts.  *See id.*  In 2019, the Bureau's actual and indirect costs from the event were approximately $2,700,000.  *See* A.R. 3643.

For each year that BMP holds its festival, the Bureau charges it a special recreation permit fee.  The Bureau determines this fee in two stages.  First, it produces a written decision, called an Estimate Decision, that details the amount BMP must pay before receiving its permit. *See* 43 C.F.R. § 2932.31(f); *see, e.g.*, A.R. 1454–55 (introducing the cost recovery estimate for the 2017 Burning Man event).  Second, it issues another written decision, called a Closeout Decision, that addresses whether BMP's "actual feeds paid" exceed the "estimated fees" it paid in advance.  43 C.F.R. § 2932.33(a); *see, e.g.*, A.R. 1243–45 (summarizing the closeout decision for the 2017 event).  In the event of an overpayment, the Closeout Decision will issue BMP a refund.  *See, e.g.*, A.R. 1243.  The Bureau takes the position that both Estimate Decisions and Closeout Decisions are subject to administrative appeal under its regulations.  *See* Gov't's Mot. for Summ. J. at 10, Dkt. 30 (citing 43 C.F.R. § 2931.8).

## C.    Procedural History

In this action, BMP challenges the Closeout Decisions for the Burning Man events held between 2015 and 2019.  *See* Am. Compl. ¶¶ 85, 87.  For each of those events, the Bureau produced both an Estimate Decision and a Closeout Decision, in accordance with the process described above.  *See* Gov't's Mot. for Summ. J. at 11–16 (identifying the appropriate portions of the administrative record).  It is undisputed that BMP did not administratively appeal any of the Estimate Decisions.  *See id.* at 11–16; Pls.' Reply at 9, Dkt. 32.  BMP did, however, appeal each of the relevant Closeout Decisions.  *See* A.R. 4745–49 (the 2015 decision), 9980 (the 2016 decision), 10,730 (the 2017 decision), 11,202 (the 2018 decision), 11,702 (the 2019 decision).

On December 13, 2019, BMP filed its initial complaint in this action, which alleged that

the Bureau had not resolved any of its administrative appeals.  *See* Compl. ¶ 67, Dkt. 1.  The

principal theory of the complaint was that the Bureau's delay in resolving those appeals

constituted an improper constructive denial.  *See id.* ¶¶ 75–90.  The Bureau moved to dismiss

that complaint on May 22, 2020, based in part on the representation that BMP "need not wait for

[the agency's appellate board] to act before seeking judicial review of [its] decisions" in federal

court.  Gov't Mot. to Dismiss at 16, Dkt. 16.  BMP responded by moving to amend its

complaint on July 21, 2020, with the goal of substituting its constructive denial claim for an

affirmative challenge to the Closeout Decisions.  *See* Pls.' Mot. for Leave to Amend, Dkt. 19.

This Court granted leave to amend on August 7, 2020.  *See* Minute Order of Aug. 7, 2020.

BMP's amended complaint argues that its Closeout Decisions violated the Administrative

Procedure Act (APA) because they were arbitrary, capricious, and in excess of the Bureau's

statutory authority.  *See* Am. Compl. ¶¶ 80–89.  First, BMP argues that the Bureau charged it an

unreasonable amount for law enforcement at the Burning Man event.  *See* Pls.' Mot. for Summ.

J. at 16–35.  Second, it argues that the Bureau charged it unreasonable amounts for other agency

expenditures, including IT services, a Bureau medical unit, and the monitoring of certain event

vendors.  *See id.* at 36–45.  Third, it argues that the Bureau failed to support its designation of the

Burning Man event as "emergency" or "mission critical work," which allowed Bureau personnel

at the event to receive higher pay.  *See id.* at 36–38.  Finally, it argues that the Bureau provided

insufficient information to assess whether other charged amounts were reasonable.  On that last

point, BMP argues that it is entitled to highly granular information, including "time sheets with

details about the specific dates, daily hours, rates of pay, and assigned tasks for each [Bureau]

employee [at the event,]" *id.* at 16; the details of those employees' "[t]ravel [i]ncidentals," *id.* at

17; and the "methodology" that determined the costs charged for the Bureau's vehicles, *id.* at 18.

5

BMP moved for summary judgment on February 19, 2021.  Dkt. 28.  The Bureau then cross-moved for summary judgment on April 9, 2021.  Dkt. 30.  In its cross-motion, the Bureau both defends the reasonableness of its Closeout Decisions and argues that BMP has challenged the wrong agency actions.  *See* Gov't's Mot. for Summ. J. at 19–45.  On the second point, the Bureau argues that BMP erred in challenging its Closeout Decisions, which it describes as mere "accounting exercise[s]."  *Id.* at 23.  Instead, the Bureau writes, BMP should have challenged its Estimate Decisions, which it characterizes as reflecting "itemized calculation[s] of permit-related costs."  *Id.* at 22.  Both parties' motions are now ripe for review.

## II.    LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).  The Court will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or "unsupported by substantial evidence," *id.* § 706(2)(E).

In an arbitrary and capricious challenge, the core question is whether the agency's decision was "the product of reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). This Court's review is "fundamentally deferential—especially with respect to matters relating to an agency's areas of technical expertise." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012) (quotation marks and alteration omitted). The court "is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted). When reviewing that explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal quotation marks omitted). For example, an agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [the explanation] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* The party challenging an agency's action as arbitrary and capricious bears the burden of proof. *Pierce v. SEC*, 786 F.3d 1027, 1035 (D.C. Cir. 2015) (citation omitted).

## III.  ANALYSIS

On the merits, BMP has a cause of action under the APA because it has challenged the appropriate agency actions—the Bureau's Closeout Decisions. Because the standard of review for these decisions is deferential, several of BMP's arguments are foreclosed as a matter of law. Nonetheless, the Closeout Decisions fail even deferential review, as the administrative record lacks substantial evidence that the costs they charged to BMP were reasonable. For the reasons

discussed below, the Court will exercise its discretion to remand those decisions without vacating them.

### A.      BMP Has Challenged the Appropriate Final Agency Actions

Absent exceptions not relevant here, *see* 5 U.S.C. § 701(a), the APA authorizes judicial review of each "final agency action for which there is no other adequate remedy in a court," *id.* § 704.  An agency action is "final" if it "mark[s] the consummation of the agency's decisionmaking process," and if it is "one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted).  In its amended complaint, BMP challenges the Closeout Decisions for the Burning Man event between 2015 and 2019.  *See* Am. Compl. ¶¶ 85, 87.[2]  For the following reasons, those decisions are "final agency action[s]."  5 U.S.C. § 704.  And contrary to the Bureau's position, *see* Gov't's Mot. for Summ. J. at 19–24, BMP's challenge to those decisions encompasses a challenge to its special recreation permit fees.

As a threshold matter, closeout decisions are final agency actions.  Each closeout decision determines the "actual fees due" under a special recreation permit, as distinct from the "estimated fees [the permittee] paid in advance."  43 C.F.R. § 2932.33(a).  In that respect, closeout decisions mark the consummation of the Bureau's decisionmaking process on special recreation permit fees.  *See Bennett*, 520 U.S. at 177–78.  Closeout decisions also determine permittees' "rights or obligations" against the Bureau.  *Id.* (internal quotation marks omitted).

---

[2] The amended complaint challenges the Bureau's "Cost Recovery Charges" for those years, Am. Compl. ¶ 85, and other language in the complaint makes clear that "Cost Recovery Charges" are synonymous with Closeout Decisions.  For example, the complaint alleges that BMP administratively appealed "Cost Recovery Charges" for the above years, *see* Am. Compl. ¶¶ 63 n.6, 67 n.7, 68 n.8, 72 n.9, 73 n.10, and the administrative record shows that BMP administratively appealed those years' Closeout Decisions, *see* A.R. 4745–49, 9980, 10,730, 11,202, 11,702.

To give one example, whenever a permittee's "actual fees due are less than the estimated fees [it] paid in advance," the Bureau must use a Closeout Decision to issue either a refund or a credit against future permits.  43 C.F.R. § 2932.33(a).  Closeout Decisions thus satisfy both requirements for finality.  *See Bennett*, 520 U.S. at 177–78.

For that reason, BMP has identified the appropriate agency action to challenge its special recreation permit fees.  The APA provides that the judicial review of "final agency action" includes the review of all "preliminary, procedural, or intermediate" actions that are "not directly reviewable" and culminate in the final action.  5 U.S.C. § 704.  The D.C. Circuit has accordingly instructed that, where agency decisionmaking occurs "in stages," the "review of  initial steps should generally be deferred until the [decisionmaking] process is complete."  *Am. Portland Cement All. v. EPA*, 101 F.3d 772, 776 (D.C. Cir. 1996).  Here, the Bureau argues that it designates permit fees as reasonable in its Estimate Decisions, as opposed to its Closeout Decisions.  *See* Gov't's Reply at 13, Dkt. 34.  But regardless of how the Bureau structures its decisionmaking, BMP could not have challenged the estimate decisions directly.  Such decisions are not final actions because an "estimate[]" that may later be adjusted to "actual fees" does not mark the consummation of the Bureau's decisionmaking process, 43 C.F.R. § 2932.33(a).  And because estimate decisions are nonfinal, the APA classifies them as "preliminary, procedural, or intermediate" actions that are "not directly reviewable," 5 U.S.C. § 704.  It follows that a permittee can challenge them only through the judicial review of later Closeout Decisions.  *See Am. Portland Cement*, 101 F.3d at 776.  BMP has done just that here.

The Bureau's remaining arguments do not persuade.  First, the Bureau ask this Court to interpret BMP's complaint as a "broad programmatic attack" on the permitting process, which the APA would not ordinarily allow, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

*See* Gov't's Mot. for Summ. J. at 21–23.  But as described above, BMP's decision specifically

challenges certain Closeout Decisions and even alleges that they are "final agency actions."  Am.

Compl. ¶ 85.  And the Bureau never explains how a challenge to the dollar value of a permitting

fee could plausibly qualify as "programmatic," *Norton*, 542 U.S. at 64.  Second, the Bureau cites

an agency adjudication to argue that estimate decisions are subject to direct administrative

appeal.  *See* Gov't's Reply at 6 (quoting *Burning Man Project*, 197 IBLA 66, 2021 WL 1713214

(Apr. 23, 2021)).  But agency adjudications are not binding on this Court.  And in any event, the

fact that an agency allows the administrative appeal of a given action has no bearing on whether

that action is "final" for the purposes of the APA.  *Cf. Murphy Expl. & Prod. Co. v. U.S. Dep't of

the Interior*, 252 F.3d 473, 479 (D.C. Cir. 2001) (noting that regulations governing

administrative appeals having no bearing on courts' subject-matter jurisdiction).  Accordingly,

for the reasons stated, BMP has challenged the appropriate agency actions for the review of its

special recreation permit fees.

### B.      Several of BMP's Arguments Fail as a Matter of Law

Under the APA, the Court must review the Bureau's Closeout Decisions to determine

whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law."  5 U.S.C. § 706(2)(A).  This standard is "highly deferential."  *Kisser v. Cisneros*, 14

F.3d 615, 618 (D.C. Cir. 1994) (citing *Am. Horse Prot. Ass'n, Inc. v. Yeutter*, 917 F.2d 594, 596

(D.C. Cir. 1990)).  Applying this standard, the Court will "presume the validity" of the Closeout

Decisions and set them aside only if they are "not supported by substantial evidence" or if the

Bureau "has made a clear error in judgment."  *Id.* at 618–19 (quoting *Citizens to Preserve

Overton Park v. Volpe*, 401 U.S. 402, 415–416 (1971)).  An agency decision may be "supported

by substantial evidence even though a plausible alternative interpretation of the evidence would

support a contrary view." *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005) (quoting *Robinson v. Nat'l Transp. Safety Bd.*, 28 F.3d 210, 215 (D.C. Cir. 1994)).  The question, at bottom, is "whether the agency action was reasonable and reasonably explained." *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015).[3]

The Court will apply that deferential standard of review to the relevant substantive rule in the FLPMA, which grants the Bureau considerable discretion in identifying what permit fees are "reasonable," 43 U.S.C. § 1734(a).  The Act allows the Bureau to charge permittees "reasonable costs" associated with processing their applications.  *Id.* § 1734(b).  It further provides that the Secretary "may" consider the wide range of factors in assessing reasonableness, including "actual costs (exclusive of management overhead), the monetary value of the rights or privileges sought by the applicant, the efficiency to the government processing involved, that portion of the cost incurred for the benefit of the general public interest rather than for the exclusive benefit of the applicant, the public service provided, and other factors relevant" under the circumstances. *Id.*  Supplementary regulations further limit cost recovery charges to the Bureau's "costs of issuing the permit, including necessary environmental documentation, on-site monitoring, and permit enforcement."  43 C.F.R. § 2932.31(e)(3).  But no regulation limits the agency's discretion in determining, as relevant here, which permit enforcement costs are reasonable. Accordingly, this Court will uphold the Bureau's special recreation permit fees if the record contains substantial evidence that they were "reasonable," as the FLPMA uses the term.

---

[3] There is "no material difference between the APA's 'arbitrary and capricious' standard and its 'substantial evidence' standard as applied to court review of agency factfinding." *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016).  To distinguish the APA's standard of review from the FLPMA's requirement of reasonableness, the Court will identify that standard of review with the phrase "substantial evidence."

This legal standard forecloses several of BMP's arguments as a matter of law.  First, the Bureau is not required to show that it administered BMP's permits in accordance with any external benchmark.  BMP repeatedly compares the Bureau's requested level of cost recovery to what it implies are industry best practices.  *See, e.g.*, Pls.' Mot. for Summ. J at 32 (referencing "nationally recognized best-practice standard for law enforcement agency staffing"); Pls.' Reply at 37 (arguing that the Bureau "failed to create any efficiency to the government processing involved for IT-related costs" (internal quotation mark omitted)).  BMP also emphasizes that former government officials have criticized the Bureau's operations.  *See* Pls.' Reply at 29 (describing the testimony of the Bureau's former Director, Robert Abbey).  But under the APA, this Court may set aside an agency's decision only if it reflects a "clear error in judgment" or is "not supported by substantial evidence." *Kisser*, 14 F.3d at 619.  There is no requirement that the decision be "the best one possible or even . . . better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016).  Accordingly, where BMP argues that the Closeout Decisions are merely unideal, as opposed to unreasonable, *see Jackson*, 808 F.3d at 936, its arguments fail to show that those decisions were arbitrary or capricious.

Second, the Bureau is not required to disentangle its expenses toward the "general public interest" from those it incurred for BMP's "exclusive benefit." *See* Pls.' Mot. for Summ. J. at 12 (quoting 43 U.S.C. § 1734(b)).  The FMPLA says only that the Bureau "may" draw that distinction.  43 U.S.C. § 1734(b).  The word "may" often "implies discretion," in contrast to the mandatory "shall." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016).  And here, the full text of § 1734(b) confirms that this use of word holds its ordinary meaning.  For instance, a separate sentence in § 1734(b) provides that the Bureau "shall" deposit its permit fees in a particular account, *see* 43 U.S.C. § 1734(b), which suggests that the section deliberately

distinguishes mandatory from discretionary language, *see Russello v. United States*, 464 U.S. 16, 22–23 (1983).  Further, the fact that the Bureau "may" consider "other factors relevant to determining the reasonableness of the costs" suggests that the provision expands the Bureau's discretion to determine reasonableness, as opposed to constricting it.  43 U.S.C. § 1734(b).  The plain text of § 1734(b) thus forecloses BMP's proposed "exclusive benefits" test.[4]

Third, the FLPMA does not unlock judicial review of the Bureau's law enforcement operations.  BMP argues, for example, that the Bureau assigned an unreasonable number of law enforcement officers to the Burning Man events, *see* Pls.' Mot. for Summ. J. at 21–25; and invested unnecessary resources into drug enforcement and public outreach, *id.* at 25–29.  To support those arguments, it seeks to show that the Bureau "could have assigned substantially fewer law enforcement officers with no compromise to public safety" and that the Bureau "has never shown" that certain law enforcement activities "led to any improvement in public safety." *Id.* at 30, 35.  But federal courts do not ordinarily review these kinds of questions, which traditionally fall within the discretion of the Executive Branch.  This Court has no expertise in the maintenance of public safety.  And nothing in either the FMPLA or the Bureau's regulations clearly requires courts to review the agency's policy judgments in this area.  Accordingly, absent extraordinary circumstances, the Court will defer to the Bureau on the issue of what law enforcement activity is appropriate to ensure public safety.

---

[4] Even if the FLPMA required distinguishing between exclusive and general benefits, there is good reason to think that the costs challenged in BMP's briefing fall into the former category. The Bureau does not appear to seek recovery for expenses that benefit Nevada residents who are unaffiliated with the Burning Man event.  Rather, the challenged costs appear to affect BMP itself, the event's attendees, or the Bureau officials who are assigned to the event.  *See, e.g.*, Pls.' Mot. for Summ. J. at 26–29 (arguing that the use of law enforcement on "[t]raffic stops for drug enforcement" served the "general public interest" with no "exclusive benefit" to BMP ).

Finally, this Court will not review the reasonableness of *de minimis* costs.  *See, e.g.*, Pls.'
Mot. for Summ. J. at 17 (objecting that the Bureau has not identified what items its individual
employees expensed as "Travel Incidentals"); *id.* at 19 (objecting that the Bureau "did not
explain why its civilian employees needed new uniforms," an expense that totaled $940).  The
FLPMA describes "reasonable costs" at a high level of generality.  *See* 43 U.S.C. § 1734(b)
(providing that those costs "include . . . the costs of special studies; environmental impact
statements; monitoring construction, operation, maintenance, and termination of any authorized
facility; or other special activities").  No language in the statute or its implementing regulations
contemplates the judicial review of individual receipts for small-dollar purchases.  Nor has BMP
identified another context in which federal courts have undertaken the audit-like analysis it
proposes.  The Court thus declines to do so here.  *See SecurityPoint Holdings, Inc. v. TSA*, 769
F.3d 1184, 1189 (D.C. Cir. 2014) (applying the maxim "*de minimis non curat lex*"); *see De
Minimis Non Curat Lex*, Black's Law Dictionary (11th ed. 2019) ("The law does not concern
itself with trifles.").

Nonetheless, although judicial review of the Closeout Decisions is not as demanding as
BMP asserts, "it is not a rubber stamp," *Nat'l Ass'n for Home Care v. Shalala*, 135 F. Supp. 2d
161, 168 (D.D.C. 2001).  As the Tenth Circuit explained in a similar context, the Bureau may not
recover the actual costs of its permit enforcement "as a matter of course."  *Nevada Power Co. v.
Watt*, 711 F.2d 913, 925 (10th Cir. 1983).  Instead, to give some effect to the word "reasonable"
in the FLPMA's allowance for "reasonable costs," 43 U.S.C. § 1734(b), the agency must
generally identify what functions it performed in support of the permitted activity, what concrete
resources it devoted to those functions, and why its expenditures on those resources were
reasonable under the circumstances.  In addition, the Bureau should provide some explanation

for year-to-year changes in the costs it seeks to recover, *cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (requiring an agency that changes an existing policy to "display awareness" of that change and "show that there are good reasons for the new policy"), and explain any special designations applied to the Burning Man event, *see, e.g.*, A.R. 1457 (designing the 2017 event as "mission-critical work"); *see also* 5 C.F.R. § 550.106(b)(1) (authorizing "premium pay" for officials performing mission-critical work).  The Bureau can meet some of these requirements through reliance on complementary federal regulations.  *See, e.g.*, Gov't's Mot. for Summ. J. at 17 n.13 (explaining that Bureau employees must follow the Federal Travel Regulation System, *see* 41 C.F.R. Subtitle F).  But the agency must have relied on those materials at the time of the decisions, and it must now make the entirety of the above showing on the record for the corresponding closeout decision.  "The courts may not accept [agency] counsel's post hoc rationalizations for agency action."  *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

### C.    The Record Lacks Substantial Evidence on the Remaining Factual Issues

The Bureau has failed to provide substantial evidence that the Closeout Decisions meet the standard described above.  This is because, although those decisions describe the Bureau's expenditures on the Burning Man events, they never address whether those costs were "reasonable," 43 U.S.C. § 1734(b).  For example, the 2015 decision calculates that the Bureau's "actual and indirect costs" for that year's event total $2,793,722.27; notes that BMP already paid a deposit of $2,944,827; then awards BMP a refund of $151,104.73.  A.R. 688.  The letter summarizing the decision does not address whether those "actual and indirect costs" were reasonable.  *See* A.R. 688–90.  Nor does the Bureau address reasonableness elsewhere in its

decision.  To the contrary, the remainder of the decision shows only—through a combination of

data tables, contracts, and the receipts—that the Bureau actually spent its reported figure.[5]  The

same pattern holds true for the other closeout decisions:  None of them addresses whether the

Bureau's expenditures were reasonable.[6]  Accordingly, none of them addresses whether the

special recreation permit fees were reasonable.  *See* 43 U.S.C. § 1734(b).

       The Bureau's argument that it addresses reasonableness in its Estimate Decisions, as

opposed to its Closeout Decisions, does not persuade.  *See* Gov't's Reply at 13.  The Bureau's

briefing does not identify what portions of its Estimate Decisions are relevant to reasonableness.

*See id.*  In addition, the materials that the Bureau identifies as the 2015 Estimate Decision share

the same defect as that year's Closeout Decision.  *See* A.R. 692–701; *see also* Gov't's Mot. for

Summ. J. at 11 (identifying the Estimate Decision as such).  In brief, although the Estimate

Decision lists what the Bureau expected to spend on different categories of costs, it does not

explain either how the Bureau reached those estimates or why its estimates are reasonable.  *See*

A.R. 698–701.  That is not enough to survive substantial evidence review.  *See Kisser*, 14 F.3d at

619.

---

[5] *See* A.R. 465 (summarizing the difference between the Bureau's actual and estimated costs);
A.R. 523–28 (showing labor costs by Bureau employee, with brief descriptions of each
employee's duties); A.R. 343–464 (showing expenses by Bureau contract, with copies of each
contract); A.R. 529–531 (showing travel costs by Bureau employee); A.R. 532 (showing the
utilization of Bureau vehicles); A.R. 466–521 (showing the costs of miscellaneous supplies and
equipment, with copies of corresponding receipts); *see also* Joint App'x Vol. I at 1–192, Dkt. 35-
2 (reproducing the above materials in the above order).

[6] *See* A.R. 786–88, 720, 713–19, 712, 721–25, 789–862 (2016 Closeout Decision); A.R. 1243–
45, 1242, 1157–1241 (2017 Closeout Decision); A.R. 2029–2771 (2018 Closeout Decisions);
A.R. 3643–61 (2019 Closeout Decision); *see also* Joint App'x Vol. I at 193–372, and Vol. II at
1–762, Dkt. 35-3 (reproducing the above materials in the above order).  The 2016–2019 Closeout
Decisions contain the same kinds of information as the 2015 Decision, except that the 2019
Closeout Decision omits the Bureau's underlying contracts and receipts.  *See* A.R. 3643–61.

Finally, although other materials in the record bear on the reasonableness of specific expenditures, they are not enough for the Bureau's total expenditures to survive APA review.  In the Court's view, the best documents for the Bureau are After-Action Reports (AARs) for the Burning Man events in 2015 and 2019.  *See* A.R. 304–42, 3671–84.  These documents discuss what operations the Bureau performed in support of those events and propose a variety of improvements for future years.  *See id.*  Some of that discussion is relevant to whether the Bureau's expenditures on those events was reasonable.  For example, the 2015 AAR explains that the Bureau retained a contractor for dispatch services because the agency had struggled to obtain qualified government dispatchers in the past year.  A.R. 336.  But although AARs provide some information about the 2015 and 2019 events, the Bureau does not appear to have prepared an AAR in 2018, *see* Pls.' Mot. for Summ. J. at 15, and the record contains only two, non-consecutive pages from the 2017 AAR, *see* A.R. 7163, 7165.  In addition, because the Bureau prepared the 2015 AAR after it prepared the 2015 Closeout Decision, the former cannot be part of the administrative record for the latter.  *See Chenery*, 332 U.S. at 196.  Finally, although the 2015 and 2019 AARs bear on the reasonableness of discrete expenditures, they do not address whether the Bureau's overall costs are reasonable.  *See generally* A.R. 304–42, 3671–84.  Nor do they address enough discrete expenditures to create a rough approximation of the whole.  *See id.*  Accordingly, the AARs cannot cure the defects in the Bureau's Closeout Decisions.

For the reasons above, the Court holds that the Closeout Decisions lack substantial evidence that the fees imposed on BMP were reasonable.  Accordingly, those Decisions are "arbitrary" or "capricious" within the meaning of the APA, 5 U.S.C. § 706(2)(A), and the Court must determine the appropriate remedy.

### D.      Remand Without Vacatur Is Appropriate

When an agency inadequately explains the basis for its decision, controlling precedent allows courts to remand that decision for additional explanation without vacating it.  *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993); *see also Checkosky v. SEC*, 23 F.3d 452, 466 (D.C. Cir. 1994) (Silberman, J., concurring) (collecting cases in which the D.C. Circuit has taken this approach).  In deciding whether to remand without vacatur, courts consider "the seriousness of the [decision's] deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."  *Allied-Signal*, 988 F.2d at 150–51 (citation omitted).  For the following reasons, the Court will exercise its discretion to remand the Closeout Decisions without vacating them.

First, the Closeout Decisions do not appear to contain serious deficiencies.  *See id.* Although those decisions lack substantial evidence for their bottom-line conclusions, many of BMP's objections to those conclusions fail to persuade.  As explained above, the Bureau is not required to prove that its costs meet any external benchmark, *see Jackson*, 808 F.3d at 936, or to separate its costs in support of the "general public interest" from those it incurred for BMP's "exclusive benefit," 43 U.S.C. § 1734(b).  *See supra* section III.B.  Similarly, this Court will not address *de minimis* costs and is likely to defer to the Bureau's expertise on questions of law enforcement.  *See id.*  To be clear, the Court is not holding that any portion of the Closeout Decisions survives APA review.  Instead, because the Court is "unsure of the [Bureau's] reasoning," it is remanding for additional explanation "without expressing a view" on whether the decisions are lawful.  *Checkosky*, 23 F.3d at 464 (Silberman, J., concurring).

The likelihood of "disruptive consequences" also weighs against vacatur.  *Allied-Signal*, 988 F.2d at 150–51.  If the Court were to vacate the Closeout Decisions, the Bureau would be required to issue BMP either a refund or a credit against future permits.  *See* 43 C.F.R. § 2932.33(a).  The parties would not agree on the amount of that refund.  And if the Court found substantial evidence for the Bureau's position on remand, BMP would be required to return either most or all of the refunded amount.  Structuring those transactions would highly disruptive, and it is hard to see how BMP would benefit from a refund that could well be temporary.

For the reasons above, the Court declines to hold that the Closeout Decisions contain serious deficiencies and finds that vacating them on an interim basis would be highly disruptive. *See Allied-Signal*, 988 F.2d at 150–51.  Accordingly, the Court remands the decisions without vacatur for reconsideration in light of this Memorandum Opinion.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Summary Judgment, Dkt. 28, is granted in part, and the defendants' Cross-Motion for Summary Judgment, Dkt. 30, is denied.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 21, 2021

19