## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLACK ROCK CITY LLC, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEB HAALAND,<br>SECRETARY OF THE INTERIOR *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 19-cv-03729-DLF |

## DEFENDANTS' RESPONSE IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiffs have filed a Motion for Attorneys' Fees and Costs, ECF No. 44 ("Motion"),

seeking recovery pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

Defendants do not dispute the timeliness of the Motion, and do not dispute that Plaintiffs are

"prevailing part[ies]," that is, parties "who ha[ve] been awarded some relief by the court."

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598,

603 (2001); *see also SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 836 F.3d 32, 36

(D.C. Cir. 2016).  However, Plaintiffs have not shown they are eligible to receive a fee award

under EAJA.  Additionally, special circumstances here make an award of any fees unjust, and

Defendants' position was substantially justified.  Finally, if the Court determines that

Plaintiffs are entitled to some fee award, the amount requested in the Motion should be

significantly reduced to account for Plaintiffs' insufficient documentation of the

reasonableness of their requests.

## I.    PLAINTIFFS FAIL TO SHOW ELIGIBILITY

A party seeking fees under section 2412(d) must submit an application "which shows that

the party is a prevailing party and is eligible to receive an award under this subsection."  28

U.S.C. 2412(d)(1)(B).  EAJA limits the definition of "party" to entities of specified size and net

worth.  *See* 28 U.S.C. § 2412(d)(2)(B).  Organizations must "show" that they had a net worth

under $7 million and fewer than 500 employees at the time the civil action was filed to be

eligible, *id.*, although organizations "described in section 501(c)(3) of the Internal Revenue

Code[,]" 26 U.S.C. § 501(c)(3), are exempt from the net worth restriction.  *Id.*

The EAJA definition of eligible "party" must be construed in light of Congress's purpose

to allow only parties with limited resources to obtain fees.  *See Unification Church v. INS*, 762

F.2d 1077, 1089 (D.C. Cir. 1985).  "The intent of the EAJA is to assist individuals or small

entities, not to subsidize large entities that are better able to afford legal services."  *Independent*

*Drivers Ass'n v. Federal Motor Carrier Safety Administration*, 675 F.3d 1036, 1040 (7th Cir.

2012) (citing *Unification Church*, 762 F.2d at 1081).  Thus, consistent with Congress's intent,

"'EAJA awards should be available where the burden of attorneys' fees would have deterred the

litigation challenging the government's actions, but not where no such deterrence exists.'"  *Id.*

(quoting *SEC v. Comserv Corp.*, 908 F.2d 1407, 1415-16 (8th Cir. 1990)).  If an opposing party

reasonably questions whether an applicant has failed to  show that it is eligible, a fee claim will

be denied when the applicant has "offered neither argument nor evidence to the contrary."  *Am.*

*Ass'n of Retired Persons v. EEOC*, 873 F.2d 402, 404 (D.C. Cir. 1989).

Applying these principles, the D.C. Circuit and other courts have cautioned against

granting EAJA fees to litigants that did not satisfy the "party" requirements before filing suit.

*See*, *e.g.*, *Est. of Woll by Woll v. United States*, 44 F.3d 464, 468-69 (7th Cir. 1994) ("assets

distributed in advance of suit cannot be disregarded in calculating the net worth of the estate"

because "[t]he practical ability of a given estate to shoulder the burden of litigation is best judged

by the net value of the entire estate, including assets which have already been distributed by the

date of suit"); *Unification Church*, 762 F.2d at 1089 (D.C. Cir. 1985) (Congress did not intend to allow parties with a "temporarily low net worth" to qualify for EAJA fees); *Miller v. United States*, 926 F. Supp. 642, 645 (N.D. Ohio 1996) (declining to limit net worth analysis solely to time of filing because "the better measure of whether the court should make an exception to the general rule of sovereign immunity for recovery of costs against the United States is the *practical* net worth of the decedent").  Just as Congress did not intend to allow organizations with a "temporarily low net worth" to qualify for EAJA fees, Congress did not intend to allow organizations with a temporarily low number of employees to qualify for EAJA fees.  *See Unification Church*, 762 F.2d at 1089, 1092 (although Congress "made a partial exception to that requirement in allowing section 501(c)(3) organizations to qualify for fees regardless of net worth, . . . Congress did not extend that exception to section 501(c)(3) organizations with large numbers of employees").

These precedents apply here, where Plaintiffs did not meet EAJA's employee requirements in numerous years before filing suit.  *See* Burning Man Project ("BMP" or the "Project") Form 990, ECF No. 44-4, at 6 (the Project had 986 employees in 2019); *see also* https://burningman.org/about/about-us/public-documents/ (last visited Sept. 11, 2023) (Forms 990 showing that the Project had 951 employees in 2015, 858 employees in 2016, 902 employees in 2017, and 946 employees in 2018).  As the D.C. Circuit has explained, "Congress desired to limit the award of fees to entities that would otherwise be greatly burdened by the costs of litigation," and exclude organizations with "the resources to meet all the essential needs of thousands of workers" because "Congress wished to limit fees . . . to entities with resources insufficient to support more than 500 employees."  *Unification Church*, 762 F.2d at 1092.

Although the Project had more than 500 employees in numerous years before the suit was filed – including 2019 – Plaintiffs contend that they are still eligible under EAJA because the

Project had fewer than 500 employees by the time the suit was filed in December of 2019, relying heavily on an unpublished decision from an extra-circuit Appellate Commissioner, rather than an Article III court.  *See* Mem. in Supp. of Pls.' Mot. for Attorneys' Fees and Costs 3–4, ECF No. 44-1 ("Pls.' Br.") (citing *Greenpeace, Inc. v. Stewart*, 2020 WL 2465321, at *3 (9th Cir. App. Comm'r May 12, 2020)).   The Court should reject these arguments for two reasons.

*First,* numerous Article III courts – including the D.C. Circuit – have cautioned against allowing EAJA fees where the plaintiff exceeded EAJA's size limitations before suit was filed. *See supra* 2-3.  As those courts explained, allowing otherwise large organizations to whittle down their net worth by disbursing assets before filing suit would circumvent Congress's intent in passing EAJA: "limit[ing] the award of fees to entities that would otherwise be greatly burdened by the costs of litigation."  *Unification Church*, 762 F.2d at 1092.  Here, the Project has sufficient assets to employ over 500 employees for much of the year building and then disassembling "a temporary city in one of the world's most inhospitable environments."  *See* Burning Man Job Opportunities, https://burningman.org/about/about-us/jobs/ (last visited Sept. 11, 2023) (stating that Black Rock City's "seasonal event staff . . . are active between May and October").  The Project's resources support more than 500 employees for half the year, and it should not be eligible to seek EAJA fees by bringing suit during its down season.  *See Unification Church*, 762 F.2d at 1092 ("Congress wished to limit fees . . . to entities with resources insufficient to support more than 500 employees").  Plaintiffs' sole countervailing authority is not precedent within the Ninth Circuit, let alone the D.C. Circuit.  *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1073 n.3 (9th Cir. 2021) (Appellate Commissioner decisions "do not constitute circuit precedent but may be treated as persuasive authority").

*Second*, Plaintiffs have not set forth an adequate factual showing that the Project had fewer than 500 employees when the suit was filed.  Unlike the *Greenpeace* plaintiffs, Plaintiffs

have not disclosed their methodology for identifying the number of employees at the time they
filed suit. *Compare Greenpeace*, 2020 WL 2465321, at *3 (human resources director submitted
declaration explaining how she had modified the organization's Form 990 employment figures,
to exclude the number of employees terminated before and hired after suit was filed), *with*
Declaration of Adam Belsky ¶ 11, ECF No. 44-4 (General Counsel stating "Upon information
and belief, and after review of BMP's employment records for 2019, BMP had 118 full-time
employees and 15 part-time employees in December of 2019 when this action commenced,
totaling 133 employees."). In the D.C. Circuit, however, such "generalized and conclusory
'information and belief' affidavits from friendly attorneys . . . will not suffice" to support a fees
petition. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir.
1982). While the stated employment figures are presented "[u]pon information and belief" the
submitted declaration does not provide supporting documentary evidence, or even describe what
kind of "employment records" were reviewed. Belsky Decl. ¶ 11. General Counsel Belsky
notably does not state that the Project terminated any employees before filing suit, let alone a
sufficient number to bring its total number of employees below 500. Another possible reading of
Mr. Belsky's declaration is that the Project simply did not schedule its seasonal employees for
work in December 2019, while maintaining a relationship with these employees so they could
resume work the next time Black Rock City was built.[1]

---

[1]     Having given such perfunctory evidence in support of their alleged eligibility in their
opening brief, Plaintiffs should not be permitted to provide new evidence with their reply brief
because "an argument is forfeited if the petitioners 'were obscure on the issue in their opening
brief and only warmed to the issue in their reply brief.'" *Twin Rivers Paper Co. LLC v. Sec. &
Exch. Comm'n*, 934 F.3d 607, 615 (D.C. Cir. 2019) (quoting *Novak v. Capital Mgmt. & Dev.
Corp.*, 570 F.3d 305, 316 n.5 (D.C. Cir. 2009)); *see also Oakes v. Thurgood Marshall Acad. Pub.
Charter High Sch.*, No. 1:20-CV-02754-DLF, 2022 WL 1556382, at *5 (D.D.C. May 17, 2022).

Given their failure to provide evidence about the number of terminations or hirings proximate to December 2019, the Court should find that Plaintiffs have failed to meet their burden to show eligibility.  The seasonal nature of employment with the Project appears to be quite distinct from the seasonal employment considered in *Greenpeace*.  Whereas Greenpeace employed "a large number of temporary and seasonal workers, some of whom work for only one day," 2020 WL 2465321, at *3, the Project appears to employ workers for six-month stretches while it builds then deconstructs a temporary city.  Given the unique nature of this annual endeavor, many of these "seasonal" employees might work with Burning Man year-after-year.  Accordingly, the Project failed to provide an adequate factual showing that it had no more than 500 employees at the time the suit was filed.

Moreover, the application fails to meaningfully address the fact that there are two Plaintiffs in this case.  It blithely seeks reimbursement on behalf of "Plaintiffs, Black Rock City LLC and Burning Man Project (collectively, 'Plaintiffs' or 'BMP')[,]" Mem. in Supp. of Pls.' Mot. for Attorneys' Fees and Costs 1, ECF No. 44-1 ("Pls.' Br."), without addressing, as required, the eligibility of both organizations.  This omission is particularly relevant here, because the statutory language focuses on eligibility "at the time the civil action was filed[,]" 28 U.S.C. § 2412(d)(2)(B), when the only Plaintiff was Black Rock City, LLC.  *See* Compl. 1, ¶14, ECF No. 1 (filed Dec. 13, 2019).[2]  From the tax returns (IRS Forms 990) submitted with the Motion, one might infer that the Project is an entity described in section 501(c)(3).  But Plaintiffs neither document, nor even assert, how Black Rock City, LLC, is an eligible entity under EAJA. The Complaint states Black Rock City "is a Nevada limited liability company[.]"  *Id*. ¶14.

---

[2]      Only following the Motion to Dismiss, ECF No. 16, did the Project enter the case through the amended complaint.  *See* Am. Compl. 1, ¶¶ 12-13, ECF No. 21.

Insofar as one might deduce the LLC's role in the larger enterprise, Plaintiffs' submissions refer only to the LLC as a "disregarded entity" with 2019 end-of-year assets of $13,252,719.  *See* Belsky Decl. 79, (Schedule R of 2019 Form 990).  This doesn't address whether the LLC is an organization described in section 501(c)(3), and suggests that the LLC was ineligible at the time of filing with a net worth exceeded $7 million.

These unaddressed eligibility requirements implicate various apportionment issues that Plaintiffs have also failed to address.  Where plaintiffs include eligible and ineligible parties under EAJA, a court must determine whether any award is permissible in light of the relationship of the parties and their role in the litigation.  *See State of La., ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir. 1988) (discussing "free-rider problems that will inevitably exist.").  Even when some award is deemed appropriate, courts frequently apportion the amount of such an award based on the ratio of eligible plaintiffs to total plaintiffs.  *See Sierra Club v. U.S. Army Corps of Engr's*, 776 F.2d 383, 393-94 (2d Cir. 1985); *Citizens Council of Delaware Cnty. v. Brinegar*, 741 F.2d 584, 598 (3d Cir. 1984) (remanding because district court "would award fees to four plaintiffs and only two of the four are eligible for attorneys' fees.").[3]

An applicant must show the eligibility of each party seeking fees under EAJA.  The Court should deny the Motion because Plaintiffs have failed to meet that statutory burden.

## II.    SPECIAL CIRCUMSTANCES WARRANT DENIAL OF FEES

Even if Plaintiffs were able to submit some explanation addressing their deficient showing of eligibility that this Court was willing to accept, there exist "special circumstances"

---

[3]    Further implicating apportionment, the LLC was the permittee and ostensibly conducted the Event from 2015-2018, *see* AR 704, 1341, 2841, 8024, while the Project was the permittee starting in 2019, *see* AR 3478.  *See also* Am. Compl. ¶ 13 (the Project "assumed responsibility for producing the Burning Man Event in 2019" and was the permittee for the 2019 Event).

that would render any fee award unjust.  The "special circumstances" exception to EAJA is a "'safety valve' [that] . . . gives the court discretion to deny awards where equitable considerations dictate an award should not be made."  H.R. Rep. No. 96-1418, at 11 (1980), as reprinted in 1980 U.S.C.C.A.N. 4984, 4990; *see also Scarborough v. Principi*, 541 U.S. 401, 422-23 (2004) (describing EAJA's "special circumstances" provision as a "built-in check"). Equitable considerations are particularly compelling here.[4]

Congress did not intend to "subsidize through [EAJA] subsection (d) the purchase of legal services by large entities easily able to afford legal services."  *Unification Church*, 762 F.2d at 1082.  But that is precisely what will occur if Plaintiffs are awarded fees here.  If otherwise large organizations like the Project could contract their size before initiating litigation, a party could easily manipulate its eligibility through creative human resources practices, or strategically time filing of an action to coincide with the lower end of cyclical swings in employment.  The Court should therefore employ its equitable discretion to deny such unjust results, in which an otherwise large, well-resourced, and sophisticated organization could time its litigation efforts with the intent of forcing the public to pay its attorneys' fees.  Only through cancellation of the Event in 2020 and 2021 due to the COVID-19 pandemic did the Project temporarily modify its practice of employing more than 500 people.  *See* https://www.rgj.com/story/life/arts/burning-man/2020/04/10/coronavirus-burning-man-2020-canceled-tickets-refunded/5132668002/ (last visited Sept. 11, 2023).

---

[4] Plaintiffs only skim over special circumstances, and erroneously conflate that factor with eligibility.  *See* Pls.' Br. 8 (denying that special circumstances exist because Defendants "can point to no actions taken by Plaintiffs that would make them ineligible.").  But eligibility and special circumstances are distinct analyses.  *See Nat'l Ass'n of Mfrs. v. Dep't of Lab.*, 159 F.3d 597, 606 (D.C. Cir. 1998).  While the statute creates "across-the-board" eligibility criteria to apply "to an entire class of cases" the special circumstances provision exists "to prevent the injustice of granting an award in a particular case."  *Id.*

Allowing Plaintiffs to collect fees by focusing solely on a temporary, aberrational window in which the Project could claim to meet eligibility requirements would provide an unneeded windfall and frustrate statutory purposes.  The Court should find that special circumstances under EAJA exist here, and deny the Motion.

## III.   DEFENDANTS' POSITION WAS SUBSTANTIALLY JUSTIFIED

Prevailing parties are precluded from receiving an award of "fees and other expenses" – which includes "reasonable attorney fees," 28 U.S.C. § 2412(d)(2)(A) – if "the court finds that the position of the United States was substantially justified."  *Id.* § 2412(d)(1)(A); *see also Am. Wrecking Corp. v. Sec'y of Lab.*, 364 F.3d 321, 323 (D.C. Cir. 2004) (per curiam) (explaining that substantial justification can be demonstrated "in litigation or at the agency level").  There is no "presumption that the Government position was not substantially justified simply because it lost the case."  *Scarborough*, 541 U.S. at 415 (quoting *Libas, Ltd. v. United States,* 314 F.3d 1362, 1365 (Fed. Cir. 2003)).  Indeed, "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."  *Pierce v. Underwood*, 487 U.S. 552, 569 (1988).

By "substantially," EAJA does not mean that the government's position must have been justified to a "high degree," but rather only that it was justified "in substance or in the main" – in other words, "justified to a degree that could satisfy a reasonable person," or with a "reasonable basis both in law and fact."  *Underwood*, 487 U.S. at 564-65 (quotation marks omitted).  In a case involving review of an agency decision, the government must demonstrate the reasonableness of both its litigation position and the agency's actions.  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004).

The government's position was reasonable here, both in this litigation and throughout the underlying (and ongoing) relationship between the parties.  The Court ruled in Defendants'

favor on several key issues, rejecting arguments involving external benchmarks,

distinguishing general public interest from exclusive benefit costs, law enforcement

operations, and *de minimis* costs.  *See* Mem. Op. 10-15, ECF No. 37.  However, the Court

rejected Defendants' interpretation of the relationship between pre-Event "Estimate

Decisions" and post-Event "Closeout Decisions," finding the latter to constitute the relevant

final agency action for review.  *Id*. at 8-10.  The Court concluded that while the Closeout

Decisions amassed various materials documenting what the agency actually spent, they failed

to provide substantial evidence explaining why the costs were "reasonable" under the Federal

Land Policy and Management Act.  *Id*. at 15-16 (citing 43 U.S.C. § 1734(b)).  And while

Defendants pointed to other materials in the record that helped fill these gaps, the Court found

that, although such materials "bear on the reasonableness of specific expenditures, they are not

enough for the Bureau's total expenditures to survive APA review."  *Id*. at 17.  The Court

declined to vacate the Closeout Decisions, observing that they "do not appear to contain

serious deficiencies" and remanding them "for additional explanation 'without expressing a

view' on whether the decisions are lawful."  *Id*. at 18 (quoting *Checkosky v. SEC*, 23 F.3d 452,

464 (D.C. Cir. 1994) (Silberman, J., concurring).[5]

While the Court ruled in Plaintiffs' favor in certain respects, the substantial

justification analysis should focus on "*why* the government's position failed in court."

*Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005).  Courts will not find the

government's position to be substantially justified when "the regulations were so clear" that

---

[5]     Defendants have not completed remand of the Closeout Decisions for 2015-2019 at issue
in this litigation.  However, Defendants have significantly modified the structure and content of
subsequent Closeout Decisions to address the Court's concerns, and have otherwise continued
their collaborative efforts to address Plaintiffs' applications to conduct the Event in 2022 and
2023.  *See* 2022 Closeout Decision, Exhibit 1 hereto.

"failure to comply with them . . . could not 'appear correct to a reasonable person.'" *Role Models*, 353 F.3d at 967 (quoting *Trahan v. Brady,* 907 F.2d 1215, 1220 (D.C. Cir. 1990)). And courts "look less favorably on instances where the challenged action is 'flatly at odds with the controlling case law' but are more sympathetic where 'the government lost because an unsettled question was resolved unfavorably.'" *Citizens for Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, No. 20-CV-00739 (APM), 2022 WL 2064831, at *2 (D.D.C. June 8, 2022) (quoting *Taucher*, 396 F.3d at 1174).  These distinctions apply here. There is a paucity of case law addressing cost recovery under special recreation permits.  The Court did not rule, nor did Plaintiffs even allege, that BLM failed to follow plainly prescribed agency procedures.  Instead, the Court essentially addressed a question of first impression evaluating Event-specific procedures against the statutory "reasonableness" standard.

In sum, Defendants' position, in this Court and in the administrative process, satisfies the substantial justification standard.  While the Court found certain defects in the Closeout Decisions, the agency has approached (and continues to approach) its Event-related duties with a reasonable basis in law and fact.

## IV.   UNREASONABLE ENTRIES REQUIRE REDUCTION

If it reaches the question of the amount of fees to award, the Court should make significant reductions from Plaintiffs' claimed amount.  An EAJA fee request must reflect the same billing judgment counsel would use in billing a private client, excluding hours that are unrelated, redundant, excessive, or otherwise unnecessary.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The Supreme Court has explained that "[i]n the private sector, 'billing judgment' is an important component in fee setting . . . .  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Id*. (internal quotations omitted).  Plaintiffs shoulder "the burden of establishing the reasonableness of [their]

11

fee request," and must provide "supporting documentation . . . of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models*, 353 F.3d at 970 (internal quotation marks and citations omitted).  In determining whether the number of hours claimed is reasonable, a court "may exercise discretion to reduce a fee award by particular amounts in response to specific objections, or by a reasonable amount without providing an item-by-item accounting." *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 54 (D.D.C. 2013) (internal quotation marks and citations omitted).

### A.      Hourly Rates

A fee award under EAJA should be calculated based on a reasonable hourly rate and the hours reasonably expended in achieving success in the litigation.  *See Hensley*, 461 U.S. at 433.  In this judicial District, the proper hourly rate is the EAJA statutory rate, adjusted for cost of living.  *See Role Models*, 353 F.3d at 969.  Plaintiffs seemingly acknowledge this proposition, seeking recovery for the following rates in each year of this litigation: 2019 ($205.25), 2020 ($207.78), 2021 ($217.54), and 2022 ($231.49).  *See* Pls.' Br. 9-10. Defendants agree that if the Court determines that any fee award is proper then it should use these hourly rates.

Plaintiffs suggest that the Court should "consider an enhanced rate given the specialized practice of the counsel involved." *Id*. at 10 (citing *Pierce*, 487 U.S. at 572).  But Plaintiffs fail to develop this contention or provide authority that would justify an enhanced rate.  Moreover, the Circuit Court of Appeals has rejected using enhanced rates because this "appears just the type of garden-variety administrative law matter that large Washington law firms handle routinely – the Supreme Court in *Pierce* explicitly rejected virtually all of the

arguments for a special-factor enhancement" including those raised by Plaintiffs. *Role Models*, 353 F.3d at 969.

> **B.      Numerous Entries Fail the Reasonableness Requirement**

Plaintiffs have submitted timesheets detailing the work of their attorneys on this case. *See* Declaration of Rafe Petersen, ECF No. 44-3 ("Petersen Decl."), (Ex. A, Holland & Knight LLP Attorney's Fees 2019-2022 ("HK"); (Ex. B, Levin Law Firm Attorney's Fees 2019-2022 ("Levin")). Careful review of these timesheets reveals significant numbers of inadequate entries. In some instances, the entire entry is flawed. Other entries lump multiple tasks together – known as "block billing" – that "is problematic because it may hinder a court's ability to determine the reasonableness of hours with a high degree of certainty." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veteran Affs.*, 10 F. Supp. 3d 21, 28 (D.D.C. 2013).; *Role Models*, 353 F.3d at 971 (block-billed time records "mak[e] it impossible to evaluate their reasonableness").[6] These deficiencies fall into multiple categories, summarized below.

> 1.      Non-Compensable Tasks

Numerous entries address non-compensable tasks under EAJA and must be removed from the calculation of an appropriate fee award.

> *a.      Unrelated Proceedings*

Plaintiffs acknowledge spending "hundreds of hours" in proceedings before the Interior Board of Land Appeals ("IBLA"), and indicate the Motion excludes those efforts and is limited "to only the hours spent on the case before this Court." Pls.' Br. 11-12. But this

---

[6]      Block billing concerns can be properly addressed by creating separate entries for each task, or itemizing the time by specific task in a single entry. *See*, *e.g.*, HK entry dated Nov. 5, 2019 (Dobles).

statement is belied by multiple entries referring to activity in the IBLA appeals. *See* HK

entries dated June 7-13, 2019; Levin entries dated July 7-Aug. 28, 2020 (regarding "BLM

Motion to Suspend Appeals"). Similarly, there are numerous entries that address Plaintiffs'

permit, issues like NEPA compliance, or issues outside the scope of the litigation. *See* HK

entries dated June 15 and 17, 2021, and July 8 and 9, 2021 (NEPA and "mitigation

conditions"); March 21, 2022 (strategy meeting "to discuss permitting and litigation").[7]

Finally, there are entries for preparation of an "amended complaint" prior to filing of

Defendants' motion to dismiss, which was apparently never filed. *Compare* HK entries dated

Feb. 19, 27, 2020; Apr. 13-17, 20-22, 2020 (prior to motion to dismiss), *with* entries starting

May 20, 2020 (regarding "amended complaint following DOJ's filing of a motion to

dismiss"); *see also Martini v. Fed. Nat'l Mortg. Ass'n*, 977 F. Supp. 482, 488 (D.D.C. 1997)

(disallowing time spent preparing pleading that was never filed).

       *b.*    *Administration and Background*

       Plaintiffs submit numerous entries that include non-compensable administrative tasks.

Tasks that are "purely clerical or secretarial" are properly excluded from an EAJA claim. *See*

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 463 F. Supp. 3d 11, 20-21 (D.D.C. 2020)

(citation omitted). Similarly, time spent addressing a lawyer's relationship with his or her

client, seeking admission to the D.C. Court, or gaining familiarity with its rules and

---

[7]     Additional HK entries relating to IBLA proceedings or issues beyond the litigation include July 11 and 12, 2019; July 16, 2019, and Nov. 19, 2019 (constitutional claims); Sept. 4, 12 and 24, 2019; Nov. 8, 2019; Feb. 18, 2020; Aug. 3, 2020; Sept. 2, 2020; June 15 and 17, 2021.

procedures is not compensable.  *See Role Models*, 353 F.3d at 973; *see e.g.* Levin entries dated

Feb. 1, 3 and 16, 2021; HK entries dated Dec. 14 and 19, 2019; July 2, 6 and 22, 2020.[8]

   c. *Public Relations and Lobbying*

   Courts within the D.C. Circuit have consistently found that entries addressing "media

relations are not compensable."  *Bennett v. Castro*, 74 F. Supp. 3d 382, 404 (D.D.C. 2014);

*see also Role Models*, 353 F.3d at 973; HK entries dated Sept. 25, 2019; Dec. 16, 2019.  A

similar restriction extends to services for lobbying, publicity, and efforts to "sway public

opinion" and influence policy makers.  *See Harvey*, 951 F. Supp. 2d at 65.  It appears that

Plaintiffs' attorneys were engaging a multi-faceted strategy including coordination with a

"political team" while conducting the litigation.  *See* HK entries dated Feb. 23, 2021; Apr. 9,

2021.[9]

   2. <u>Insufficient Entries</u>

   Unlike entries that address wholly non-compensable services, there are other entries

that provide "an inadequate description" and merit a partial reduction of the requested fees.

*See Nat'l L. Ctr. on Homelessness & Poverty*, 10 F. Supp. 3d at 29.

   a. *Meetings and Internal Conferences*

---

[8] Additional HK entries describing non-compensable administrative tasks include Dec. 11, 12 and 13, 2019; Mar. 12, 2020; Feb. 16, 17, 19 and 22, 2021; Mar. 2, 2021; May 28, 2021; June 9, 2021.

[9] Additional HK entries addressing non-compensable media relations or lobbying include July 26, 2019; April 14 and 15, 2020; May 1 and 29, 2020; June 17, 2020; Aug. 13, 2020; Oct. 14, 2020; Nov. 18, 2020.  And other entries do not explicitly mention "political" strategy but refer to meetings with "R. Gold" who is the partner heading the "political team."  *See*, *e.g*., HK entry dated April 28, 2021 ("[c]onference call w R. Gold regarding coordination of litigation effort"); *see also* HK entries dated Sept. 17, 2019; Oct. 24, 2019; June 28, 2020; Nov. 4, 2020; April 23, 2021; May 3, 2021.

Plaintiffs contend that they "maintained a lean team of one partner and one associate with occasional support from one other partner" plus Mr. Levin.  Pls.' Br. 12.  But the timesheets are replete with entries describing "strategy" and "team" meetings and other internal conferences involving multiple lawyers.  The word "strategy" appears in the HK entries approximately 58 times.  *See*, *e.g.*, HK entries dated June 23, 2020 ("Call with team regarding lit strategy"); Sept. 24, 2020 ("Conference call with team to discuss legal and political strategy").  Such entries raise various concerns.  Internal meeting and conferences prompt the question "why this relatively straightforward case . . . required so many lawyers expending so many hours."  *Role Models*, 353 F.3d at 972.  When, as here, "the time records contain so little information, [a court] ha[s] no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant."  *Id*.

b.     *Vague, Cursory and Repetitive Entries*

The timesheets include a significant number of repetitive, cursory descriptions that lack sufficient detail to satisfy a claimant's burden to verify the reasonableness of the billings.  *Compare Role Models*, 353 F.3d at 971 (noting deficiency of a law clerk's "identical one-line entry" on eight consecutive weekdays addressing preparation of a brief) *with* HK entries dated May 4-17, 2021 (in which eight of ten entries consist of "work on combined opposition and reply memorandum" ranging from 2.8 to 6.2 hours for a total of 37.5 hours).  Further, Plaintiffs state that Mr. Levin "performed the summary judgment work himself."  Pls.' Br. 12 (citing Petersen Decl. at ¶ 13).  But the timesheets reveal redundant efforts with many instances of different lawyers "preparing" or "drafting" the same pleading at the same time.  *Compare* Petersen Decl. 11-12 (HK entries addressing response/reply brief), *with id*. 19 (Levin entries).  Other entries are "inadequately detailed," such as failing to identify a participant(s), event, and sufficiently descriptive rationale.  *See Nat'l L. Ctr. on Homelessness*

16

*& Poverty*, 10 F. Supp. 3d at 29; *see e.g.* HK entries dated May 8, 2020; June 23, 25, 27 and

29, 2020; December 4, 11, 21 and 22, 2020 (in numerous instances describing "discussions

and analysis" but failing to identify any other participants).  Repetitive but insufficiently

descriptive phrases appear throughout the timesheets.  *See*, *e.g.*, HK entries in Nov. 2019

("attention to" complaint); HK entries dated Oct. 20 and 26, 2020 ("[c]onference call with

team to discuss strategy").

   c. *Inadequately Documented Expenses*

   Plaintiffs seek reimbursement for litigation-related expenses.  *See* Pls.' Br. 13;

Petersen Decl. at 13-16.  Some of the relevant entries are sufficiently self-evident and

customarily incurred in litigation of this nature, such as fees for filing/admission, copies, and

PACER.  But the expense entries reflect significant imprecision.  For one thing, Plaintiffs say

they request $16,329.89 of expenses "specified in Exhibit A to the Petersen Declaration," Pls.'

Br. 13, but Exhibit A presents a figure of $14,655.28 for "total costs reimbursement," Petersen

Decl. 16.  Multiple entries provide no detail and fail to explain the purpose of the expense

incurred, whether it was reasonably incurred, or even related to this case.  For example, there

are six entries seeking reimbursement for overnight courier services, with no information aside

from the identities of the sender/receiver, date and tracking number.  *Id*. at 13-14.   Here

again, the Court needs more information than Plaintiffs have provided to determine whether to

award the proffered costs.  Checking the dates for charged Westlaw usage against the

timesheets indicates that some of the cost entries align with textual references to performing

legal research, while others do not.  For example, there are claimed Westlaw charges for

January 16, 2020 ($751.78), March 19, 2020 ($440.61), and April 7, 2020 ($489.25), but no

corresponding timesheet entries on those dates detailing conduct of legal research.  *Compare*

Petersen Decl. at 15, *with id*. at 8.[10]

       3.       Summary of Reductions for Non-Compensable and Insufficient Entries

The above-described deficiencies do not facilitate a line-by-line calculation of

reductions to the fee request.  Rather, it is customary in such circumstances to apply a global

reduction to the entire fee claim, based on the frequency and severity of the shortcomings in

the submitted time records.  *See Bennett*, 74 F. Supp. 3d at 406 ("Defendant's objections are

too numerous to address individually").  A "large number of entries" with serious deficiencies

has been found to warrant a 50 percent reduction.  *See Role Models*, 353 F.3d at 973.  Where

deficiencies are fewer and less severe, but involve "over 100 entries," a reviewing court

imposed a 15 percent reduction.  *See Pursuing Am.'s Greatness*, 463 F. Supp. 3d at 21.  Where

there exist "several but non-pervasive errors in submitting hours," *Nat'l L. Ctr. on

Homelessness & Poverty*, 10 F. Supp. 3d at 29-30, or "several dozen" deficient entries,

Bennett, 74 F. Supp. 3d at 406, this Court imposed reductions of 12.5 percent and 10 percent,

respectively.  Plaintiffs' request is most analogous on this spectrum to *Role Models*, and

justifies at least a fifty percent reduction in the total claim for fees and expenses.

       4.       Reduction for Limited Degree of Success

The Supreme Court explained in *Hensley* that, "where the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained."  461 U.S. at 440 ("the extent of a plaintiff's success is a

---

[10]    Additional instances of HK entries that lack any reference to performing legal research on the dates of claimed Westlaw charges include Nov. 1, 4, 6 and 8, 2019; March 4 and 5, 2019; May 4-7, 2020; and March 22, 2022.  Further, there are eleven claimed Westlaw charges for dates after the last timesheet entry (and entry of judgment), starting with March 30, 2022.  The total amount for these questionable charges is $7,187.40.

crucial factor in determining the proper amount of an award"). "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436; *see also Michigan v. U.S. EPA*, 254 F.3d 1087, 1091 (D.C. Cir. 2001) (a party may not recover fees "for time spent on an issue on which it was wholly unsuccessful").

      Plaintiffs improperly seek recovery related to their deeply flawed original complaint. That complaint, filed solely on behalf of Black Rock City LLC, named the quasi-judicial IBLA as a Defendant, under the misconception that exhaustion of administrative remedies before the IBLA was a prerequisite to judicial review in this Court. *See* Compl. ¶¶ 4-9. Plaintiff advanced two causes of action addressing the IBLA's "constructive denial" of the LLC's appeals or its "unreasonable delay" under the "failure to act" prong of the APA, 5 U.S.C. § 706(1). *See id.* ¶¶ 75-91; *see also id.* 24 (Prayer for Relief omitting any mention of BLM and seeking relief solely against the IBLA). Defendants filed a motion to dismiss clarifying, among other things, that Plaintiff was laboring at a nonexistent jurisdictional quandary because in these circumstances exhaustion before the IBLA was not a prerequisite to judicial review. *See* Defs.' Mem. in Supp. of Mot. to Dismiss 16 (citing *Farrell-Cooper Mining Co. v. U.S. Dep't of the Interior*, 864 F.3d 1105, 1113 (10th Cir. 2017)), ECF No. 16-1. Rather than defending against the motion, Plaintiffs sought leave to file the Amended Complaint, which proceeded solely against BLM, contending the 2015-2019 cost recovery decisions were "arbitrary and capricious" under 5 U.S.C. § 706(2). *See* Am. Compl. ¶¶ 80-89. Any fee recovery for services performed prior to filing of the motion to dismiss should be heavily reduced to account for Plaintiff's misstart in bringing this action.

      Even after recalibrating, Plaintiffs obtained only limited success. The district court ruled that at least five of Plaintiffs' arguments were "foreclose[d] . . . as a matter of law." Mem. Op. 12. This included Plaintiffs' primary argument addressing law enforcement costs.

*See* Mem. in Supp. of Pls.' Mot. for Summ. J. 19, ECF No. 28 ("Pls.' MSJ Br.") (stating that "[l]aw enforcement labor was by far the largest single cost item . . . comprising between 41% and 52% of the total costs charged" each year).  Of the argument section in Plaintiffs' opening brief totaling 31 pages, over half (17 pages) was allocated to this issue.  Yet the Court was unconvinced it could "review the agency's policy judgments in this area" and concluded it would "defer to [BLM] on the issue of what law enforcement activity is appropriate to ensure public safety."  Mem. Op. 13.  Moreover, Plaintiffs requested remand of the cost recovery decisions to BLM, and refund of every cost addressed in their summary judgment motion.  *See* Pls.' MSJ Br. 45.  And Plaintiffs sought injunctive relief, to "compel" Defendants to issue a refund and to prohibit Defendants "from charging further unreasonable or unjustified costs to Plaintiffs[.]"  Proposed Order 2, ECF No. 28-1.  The Court rejected these arguments, ruling for Plaintiffs on the narrow grounds that Closeout Decisions lacked sufficient detail to demonstrate the reasonableness of costs previously detailed in the Estimate Decisions, while "declin[ing] to hold that the Closeout Decisions contain serious deficiencies and find[ing] that vacating them on an interim basis would be highly disruptive."  Mem. Op. 19.

*SecurityPoint Holdings* provides guidance on determining the appropriate amount of a reduction in fees for limited success.  In that case, the plaintiff asked that the court order the agency to "withdraw the offending changes" related to the challenged agency decision, and the court, as here, declined that request and ordered a more narrow remedy.  *SecurityPoint Holdings, Inc.*, 836 F.3d at 41.  The Court of Appeals found that a 20 percent reduction for limited success was warranted.  *Id.*  But that conclusion was based on the observation that the plaintiff "won a significant victory – an opinion *vacating* the challenged order on the ground that the agency had failed to meet the minimum requirements of reasoned decisionmaking."  *Id.* (emphasis added).  The difference between vacating and declining to vacate the challenged

decision is significant.  Plaintiffs prevailed here to a much lesser extent, obtaining an order

that remanded the Closeout Decisions without vacatur, declined to order any refund or any

injunctive relief, and dismissed the case.

In addition to any reduction for the reasonableness of Plaintiffs' submitted time entries,

the Court should make a further reduction to address Plaintiffs' limited success.

## V.      CONCLUSION

For the above reasons, the Court should deny the Motion.  Alternatively, the Court

should significantly reduce the amount of any fee award.

DATE:  September 11, 2023.                    Respectfully submitted,

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

_/s/ Paul A. Turcke_
PAUL A. TURCKE
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Telephone: 202-532-5994
E-mail: paul.turcke@usdoj.gov

_Counsel for Defendants_